Stanley TALESNICK and Claudia
Talesnick, Petitioners,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

No. 49T10–9509–TA–00092.

Tax Court of Indiana.

March 20, 1998.

Stanley Talesnick[1], Mark R. Waterfill, Leagre & Barnes, Indianapolis, for Petitioners.

1. Mr. Talesnick is an attorney as well as one of the petitioners in this matter. He represents himself and his wife.

Jeffrey A. Modisett, Attorney General, Joel Schiff, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

The Petitioners, Stanley and Claudia Talesnick (the Talesnicks), appeal the State Board of Tax Commissioners' (State Board) final determination denying them a reduction in the assessed value of their real property. The Talesnicks also appeal the subsequent raising of the assessed value of their home by the State Board and the lack of an opportunity to respond to that action. Although the Talesnicks initially raised five issues, those issues have been narrowed to two:

I. Whether the State Board properly valued the Talesnicks' land at $110,000.

II. Whether the increase in the assessed value of the Talesnicks' residence was erroneous and done without providing the Talesnicks an opportunity to respond.

## FACTS AND PROCEDURAL HISTORY

The Talesnicks' real property, consisting of improvements and 2.717 acres of land, is located in Marion County. The property is on the banks of Eagle Creek Reservoir in the Eagle Ridge subdivision on the west side of Indianapolis. In addition to Eagle Ridge, there are other subdivisions surrounding the reservoir. Bay Colony and Green Braes are west of the reservoir and lie to the north of Eagle Ridge. Traders Cove lies on the east bank of the reservoir.

Eagle Ridge does not possess the "infrastructure" that the other subdivisions possess. Specifically, Eagle Ridge does not have city water, sewers, fire hydrants, or city-maintained streets. (Trial Tr. at 48–50). However, the properties in all the subdivisions are similar in one respect. The properties surrounding the reservoir are separated from the water by a water flowage easement. (Trial Tr. at 17) (Oral Arg. Tr. at 9–11). The residents of Eagle Ridge (and the residents of the other subdivisions surrounding the reservoir) "have a revocable license from ... Indianapolis granting [them] the right to cross over the city property to the water's edge and to construct a dock on the city's property and provid[e] the city with a liability insurance policy...."[2] (Trial Tr. at 59); (Oral Arg. at 10–11).

In accordance with IND.CODE ANN. § 6-1.1–4–13.6 (West 1989) (amended 1993 & 1997), the State Board promulgated a Land Order for use by Marion County assessing officials for the 1989 general reassessment and subsequent years. Under that Land Order, the base rate[3] values of a parcel of land in Eagle Ridge may vary between $90,000 and $110,000 for the first acre and $2,000 and $4,000 for each additional acre. The Talesnicks' real property was assessed at a total of $311,010. This amount consists of $116,910, the assessed value of the land[4], and $194,100, the assessed value of the improvements. Simply put, the Talesnicks' land was valued at the highest value allowed under the land order.

On February 28, 1990, the Talesnicks filed a Form 130 Petition for Review of Assessment with the Marion County Board of Review (BOR). The BOR declined to alter the Talesnicks' assessment, and subsequently the Talesnicks filed a Form 131 Petition for Review of Assessment with the State Board. See IND.CODE ANN. § 6–1.1–15–3 (West 1989) (amended 1993 & 1997); IND.ADMIN.CODE tit. 50, r. 4.2–3–3 (1992) (codified in present form at IND.ADMIN.CODE tit. 50, r. 4.2–3–3 (1996)).

---

**2.** The evidence regarding the ownership of the land subject to the water flowage easement is unclear. Mr. Talesnick discusses crossing "city property" to get to the water. However, the bulk of the evidence seems to indicate that the Talesnicks' have legal title to the land that abuts the water and the Talesnicks clearly have a revocable license to use the land. Regardless, neither party argues the effect of this ambiguity on this case. Therefore, the Court does not address the issue. If the parties wish to address the issue on remand, they may do so.

**3.** See IND.ADMIN.CODE tit. 50, r. 2.1–2–1(b) (1992) (codified in present form at IND.ADMIN.CODE tit. 50, r. 2.2–4–6 (1996)).

**4.** The Talesnicks property was assigned the highest value allowed under the land order for each acre of their property. The first acre was assessed at $110,000 and each additional acre was valued at $4,000. Throughout this opinion, the Court will generally refer only to the first acre value. However, the Court's reasoning applies to valuation of the entire parcel.

A hearing on the petition was held on May 10, 1995. On May 11, 1995, the State Board hearing officer, Ron Stinson, personally inspected the Talesnicks' property. The State Board issued its final determination on July 28, 1995 denying the Talesnicks' protest and increasing the assessed value of the Talesnicks' home. *See* IND.CODE ANN. § 6–1.1–15–4 (West Supp.1997); *see also Joyce Sportswear Co. v. State Bd. of Tax Comm'rs,* 684 N.E.2d 1189, 1191, 1194 n. 8 (Ind.Tax Ct.1997), *appeal dismissed* (discussing State Board ability to increase assessment after taxpayer initiated petition for review). This increase was based on a recalculation of the square footage contained in the finished portion of the Talesnicks' basement. The Talesnicks filed an original tax appeal on September 7, 1995. A trial was held in this matter on September 16, 1996. This Court heard oral argument on January 6, 1997. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives the final determinations of the State Board great deference when it acts within the scope of its authority. *Indiana Sugars, Inc. v. State Bd. of Tax Comm'rs,* 683 N.E.2d 1383, 1385 (Ind.Tax Ct.1997). This Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.*

■ Like any party appealing an administrative decision, the taxpayer bears the burden of demonstrating that the State Board's final determination is improper. *See Componx, Inc. v. State Bd. of Tax Comm'rs,* 683 N.E.2d 1372, 1374 (Ind.Tax Ct.1997); *see*

*also North Park Cinemas, Inc. v. State Bd. of Tax Comm'rs,* 689 N.E.2d 765, 767 (Ind. Tax Ct.1997) (party appealing administrative decision bears the burden of proof before this Court). A taxpayer must present a "prima facie case, or one in which the evidence is 'sufficient to establish a given fact and which if not contradicted will remain sufficient.'" *GTE N., Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 887 (Ind.Tax Ct.1994) (quoting *Thorntown Tel. Co. v. State Bd. of Tax Comm'rs,* 629 N.E.2d 962, 964 (Ind.Tax Ct.1994)). Although the burden of proof never shifts, once the taxpayer presents a prima facie case, the duty to go forward with the evidence shifts, and it is incumbent on the State Board to rebut the taxpayer's evidence. *Western Select Properties v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1071–72 (Ind.Tax Ct.1994).

## Discussion

### I. The Value of the Talesnicks' Land

The Talesnicks' first contention is that their land was incorrectly valued at $110,000 per acre. The Talesnicks contend that valuing all of the land in Eagle Ridge that was located around the water at the highest value allowed under the Marion County Land Order was arbitrary.[5] The Talesnicks claim that the lack of infrastructure in Eagle Ridge, as well as the water flowage easement, adversely affects the value of property located there. The Talesnicks assert that the State Board should select a lower value for their land than the land in the other subdivisions, which possess an improved infrastructure.[6]

The Talesnicks' also argue that they are entitled to the application of a negative influence factor for their property because of the lack of infrastructure and the water flowage easement. *See* IND.ADMIN.CODE tit.

5. Generally, land orders are developed by collecting and analyzing comparable sales data for an area. *See* IND.CODE ANN § 6–1.1–4–13.6; *see also* IND.ADMIN.CODE tit. 50, r. 2.1–2–1 (codified in present form at IND.ADMIN CODE tit. 50, r. 2.2–4–2, –6 (1996)); *see also Poracky v. State Bd. of Tax Comm'rs,* 635 N.E.2d 235, 238 (Ind.Tax Ct.1994). However, other factors may be considered when setting land values. The County Land Valuation Commission studies the sales data and provides a

range of values for the property in a neighborhood. *See* IND.CODE ANN. § 6–1.1–4–13.6. The State Board sets the final values in a Land Order. *Id.; see also Wirth v. State Bd. of Tax Comm'rs,* 613 N.E.2d 874, 878 (Ind.Tax Ct.1993).

6. Land around the water in the other subdivisions is also valued at $110,000 per acre.

50, r. 2.1–2–1 (codified in present form at IND.ADMIN.CODE tit. 50, r. 2.2–4–10(a)(9) (1996)). A negative influence factor is justified in instances where property has a "condition peculiar to the land that dictates an adjustment, either positive or negative, to the extended value to account for variations from the norm." *Id.* This Court has previously held that influence factors are appropriate for making adjustments to the value of land that is encumbered by an easement. *See Poracky,* 635 N.E.2d at 238. The Talesnicks argue that the lack of an infrastructure, as well as the water flowage easement cause the value of their land to vary from the norm. Therefore, they are entitled to the application of a negative influence factor.

The State Board maintains that the Talesnicks' land, when compared with other land in Eagle Ridge, is valued correctly at $110,000. The Talesnicks insist that the State Board has arbitrarily limited its comparison properties to those located in Eagle Ridge, which prevents accurate valuation of the Talesnicks' land. This Court has previously addressed a similar factual situation.

In *Vonnegut v. State Bd. of Tax Comm'rs,* 672 N.E.2d 87, 89 (Ind.Tax Ct.1996), *review denied,* the taxpayer's land was being assessed at $270 per front foot, which was consistent with the Land Order. *Id.* However, virtually identical properties located across the street were assessed at almost $100 less per front foot. *Id.* The State Board argued that the properties located across the street, although in the same neighborhood, were in a different subdivision and therefore could be disregarded in arriving at the value of the taxpayer's property. This Court held that the State Board "may not arbitrarily limit its comparisons to properties within the same subdivision." *Id.* at 90. Further, this Court held that "surrounding properties should . . . inform the assessor as to the value of the given property—regardless of their subdivision." *Id.*

The State Board offered no evidence regarding which properties were compared when setting the land values for Eagle Ridge. When determining land values, the State Board must not arbitrarily limit its comparison properties. Although a particular subdivision may contain enough parcels, as well as defining characteristics, to enable the State Board to accurately determine land values without reference to other subdivisions, the State Board must actually make such a determination before it refuses to consider comparing land in other subdivisions when setting values in a land order or on a petition for review. It is simply not permissible to ignore comparable properties located nearby when this Court has previously stated that surrounding properties should inform the assessor of the value of a given piece of property. *Id.* In the present case, there is no evidence to indicate that the State Board compared the properties in Eagle Ridge with those in the other subdivisions. In fact, the evidence indicates that it did not do so.

Eagle Ridge does not have the same infrastructure as the other subdivisions. There are no city sewers, no city water, and no city-maintained streets with access to the property. However, the Talesnicks' property was valued *identically* to the property surrounding the water in the subdivisions that have *more amenities.* The sole reason given by the State Board for selecting the $110,000 value for the Talesnicks' land was that it was located "on the water." This is simply insufficient to rebut the Talesnicks' prima facie case that their land should not be valued as highly as the land "on the water" in the other subdivisions.[7]

The Talesnicks also presented evidence at trial that the water flowage easement encumbers more of their property than it does their neighbors. Mr. Talesnick testified that he estimated the water flowage easement to encumber 35% to 40% of his property. (Trial

---

**7.** There was no evidence presented by either party regarding the actual effect of an improved infrastructure on the value of the homes in Eagle Ridge. The only evidence presented that was remotely related to this issue was testimony offered by the State Board that Mr. Talesnick was questioned about the actual purchase price of his home but refused to answer believing the purchase price was not relevant. (Trial Tr. at 84). This Court makes no decision today regarding the actual effect of the lack of infrastructure on the value of the homes in Eagle Ridge. The development of this factual inquiry will be left to the parties on remand.

Tr. at 20). Mr. Talesnick also testified that the grade or slope of his property was less than that of other properties surrounding the reservoir. This allows the water to encroach on his property to a greater extent than it does on his neighbors. (Trial Tr. at 19). Mr. Talesnick's testimony was supported with maps of the subdivision showing the line of the water flowage easement, the topography of the subdivision, and photographs of his home and others around the reservoir. (Pet'r Ex. 3–6 and 6–52).

The State Board's hearing officer testified that the presence of the water flowage easement around the reservoir did not merit the application of an influence factor. He based this conclusion on the fact that the Talesnicks did not present evidence "to indicate [their] property was less valuable than the surrounding properties." (Trial Tr. at 87). In addition to this, the Final Assessment Determination of the State Board indicates that "the water flow easement was taken into consideration when the base land value was set." (Resp.Ex. D).

The Land Order may have accounted for the presence of the easement on *all* parcels of land around the reservoir through an examination of comparable sales.[8] However, influence factors are applied to a *specific* parcel of land when it has a "condition ... that dictates an adjustment ... to account for variations from the norm." *See* IND.AD-MIN.CODE tit. 50, r. 2.1–2–1 (codified in present form at IND.ADMIN.CODE tit. 50, r. 2.2–4–10(a)(9)). The Talesnicks presented evidence that the water flowage easement encroaches on their land to a greater extent than it does the other land surrounding the reservoir. That the presence of a water flowage easement on all the parcels of land may have been accounted for in the Land Order does not mean that the extra burden that the Talesnicks allege was accounted for in valuing the Talesnicks' land. Therefore, the appropriate question for the State Board is not whether the Land Order accounted for the presence of the water flowage easement, but rather whether the Talesnicks' land is encumbered by the easement to an extent such that application of a negative influence factor is warranted.

The Talesnicks made a prima facie case showing their property was valued incorrectly. Once this is done, the State Board must rebut their evidence. *See Western Select,* 639 N.E.2d at 1071–1072. The State Board must do more than merely assert that it valued the property correctly. *See Thorntown Tel. Co.,* 629 N.E.2d at 965. There may be reasons why the Talesnicks' land is properly valued at $110,000 per acre. Perhaps the land has a superior view of the reservoir. The lack of a major road leading into the subdivision may increase the value of the land because the streets are safe and quiet. The Talesnicks' land might be flat in comparison to other parcels located around the reservoir. There may be more shopping or commerce located nearby. Perhaps the water flowage easement does not affect the value of the Talesnicks' land any more than it does the other land surrounding the reservoir. The State Board offered no justification in support of its position. Therefore, the State Board's final determination is not supported by substantial evidence.

## II. The Increase of the Assessment

The second issue is whether the State Board erred in raising the assessed value of the Talesnicks' residence after the inspection by the hearing officer. The Talesnicks also object to the increase in assessment without being given the opportunity to respond to that action. The State Board does have the authority to raise the assessed value of property on a taxpayer initiated petition for review. *See* IND.CODE ANN. § 6–1.1–15–4(a); *see also Joyce,* 684 N.E.2d at 1191, 1194 n. 8. Prior to the hearing officer's visit to the Talesnicks' home, the finished portion of the Talesnicks' basement was measured at 1,027

---

8. The State Board has the authority to determine the guidelines under which land is valued. *See* IND.CODE ANN. § 6–1.1–4–13.6. One method available for the valuation of land under the State Board's regulations is the Sales Comparison Method. *See* IND.ADMIN CODE tit. 50, r. 2.1–2–1 (codified in present form at IND.ADMIN.CODE tit. 50, r. 2.2–4–5). Under this method of valuation, sales of similar parcels are examined in order to arrive at an approximate value for comparable land in the area. However, adjustments must often be made to account for differences in the subject land from the comparison parcels. *Id.*

square feet and the unfinished portion at 3,080 square feet. (Pet'r Ex. 8). Upon viewing the Talesnicks' home, the hearing officer determined that the finished portion of the basement was larger than 1,027 square feet. The square footage of the finished portion of the Talesnicks' basement was recalculated at 2,036 square feet and the Talesnicks' assessment raised accordingly.

█ The Talesnicks claim that the State Board has overcalculated the actual square footage in their basement. The evidence regarding whether the square footage of the finished portion of the basement was calculated correctly is unclear at best. Mr. Talesnick asserted that the entire area of the basement was 3,080 square feet. (Oral Arg. Tr. at 45). The final determination of the State Board issued on July 28, 1995 states that the square footage of the finished portion of the basement is 2,036 square feet and the unfinished portion is 1,044 square feet (3,080 total square feet). (Resp't Ex. D). However, the property record cards submitted as evidence, as well as the statements of both the Talesnicks and the State Board at

oral argument, lead this Court to conclude that the square footage actually entered on the property record card by Marion County is higher than that as determined by the State Board in its final determination. (Pet'r Ex. 8) (Resp't Ex. G) (Oral Arg. Tr. at 37–46). In short, confusion reigns with respect to the actual measurements of the Talesnicks' basement. This Court remands this issue to the State Board and ORDERS the State Board to remeasure the Talesnicks' basement and to adjust the True Tax Value [9] of the Talesnicks' property if necessary.[10]

## CONCLUSION

For the foregoing reasons, this cause is REMANDED to the State Board for further consideration consistent with this opinion.

---

**9.** *See* Ind.Code Ann. § 6–1.1–31–6 (West 1989).

**10.** Because the Court has ordered the Talesnicks' basement remeasured, the Court does not address the lack of an opportunity to respond to the increase in the assessed value of their residence.