Peter ZAKUTANSKY, Petitioner,

v.

**STATE BOARD OF TAX COMMISSIONERS,**
Respondent.

No. 45T10–9609–TA–00123.

Tax Court of Indiana.

July 7, 1998.

Fred M. Cuppy, Kevin E. Steele, Burke, Murphy, Costanza & Cuppy, Merrillville, for Petitioner.

Jeffrey A. Modisett, Attorney General, Joel Schiff, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Peter Zakutansky (Zakutansky) appeals a final determination of the State Board of Tax Commissioners (State Board) assessing his boat storage and marina facility as of March 1, 1989.

**FACTS AND PROCEDURAL HISTORY**

Zakutansky owns a marina located in Portage, Porter County, Indiana. The marina sits on a waterway known as Burns ditch. The marina consists of several buildings, a boat storage area, and a series of docks made partially of concrete and partially of wood. The buildings are simple metal pole buildings with few distinguishing features.

Located adjacent to the docks is a retaining wall. The base of the retaining wall meets the sidewalk of the dock area. The wall is not vertical but rather slopes away from the edge of the water and has concrete

stairs built into it. The concrete wall does not contain any footings nor are any metal supports or rods buried in the concrete for strength or stability.

The marina was assessed as of March 1, 1989. Believing the assessment to be too high, on February 8, 1990, Zakutansky filed six Form 130 Petitions for Review of Assessment with the Porter County Board of Review raising numerous issues. Unsatisfied with the results obtained on these petitions, on August 21, 1990, Zakutansky filed six Form 131 Petitions for Review of Assessment with the State Board. These petitions raised twenty-five issues for the State Board's resolution. The State Board issued its final determination on August 9, 1996. On September 20, 1996, Zakutansky filed this original tax appeal. A trial was held on September 26, 1997. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

 This Court gives the final determinations of the State Board great deference when it acts within the scope of authority. *Indiana Sugars, Inc. v. State Bd. of Tax Comm'rs*, 683 N.E.2d 1383, 1385 (Ind.Tax Ct.1997). This Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.*

### Discussion

 Of the twenty-five issues originally raised by Zakutansky in his six Form 131

petitions, only three remain for this Court to review. Zakutansky's first contention is that the masonry retaining wall was incorrectly valued on a per square foot basis instead of a per linear foot basis and that an improper grade was applied to the wall.[1]

The regulations provide that masonry walls are to be measured on a per linear foot basis. *See* Ind.Admin.Code tit. 50, r. 2.1–4–5 (1992) (codified in present form at *id.* r. 2.2–12–5 (1996)). The State Board concedes that the wall was incorrectly assessed and agrees to reassess the wall on a per linear foot basis. (Resp't Br. at 8). However, the State Board contends that the A grade applied to the wall is correct.

The State Board attempts to support its position[2] by pointing out that the hearing officer, Mr. Kurt Ott (Ott), "considered the additional costs it took to prepare the site for a slanted wall and the additional costs necessarily involved in placing ... concrete stairs into a slanted walkway when he recommended a grade A." (Resp't Br. at 8). Zakutansky counters by arguing that an A grade masonry wall would not have deteriorated as rapidly as this masonry wall has. Moreover, the wall contains no footings or reinforcing materials to make it particularly strong or durable.

In further support of his position, Zakutansky presented empirical evidence regarding the appropriate grade. Zakutansky offered an estimate prepared by an expert witness, Mr. Logan Sammons. Sammons estimated that a masonry wall like Zakutansky's could be built for approximately $7,313.[3] Zakutan-

1. Grade is defined by the State Board's regulations as a concept "used to adjust the total base replacement cost ... to account for variations in the quality of materials, workmanship, and design." *See* Ind.Admin.Code tit. 50, r. 2.1–4–3 (1992) (codified in present form at *id.* r. 2.2–10–3 (1996)). The regulations go on to state that "[t]he selection of the proper grade ... calls for careful consideration and sound judgment on the part of the assessor." *Id.*

2. The Court notes that the State Board's final determination contains no mention of the reasons an A grade was assigned to the wall. This Court has recently held that post hoc rationalizations will not suffice to support a final determi-

nation. *See Canal Square Ltd. Partnership v. State Bd. of Tax Comm'rs*, 694 N.E.2d 801, 809 (Ind.Tax Ct.1998). Regardless, this Court will treat Ott's explanation as part of the final determination because Zakutansky did not argue the point. *See Loveless Construction Co. v. State Bd. of Tax Comm'rs*, 695 N.E.2d 1045, 1050 n. 8 (Ind.Tax Ct.1998).

3. The cost of building the wall was presumably used by Zakutansky because True Tax Value is theoretically based on reproduction cost minus depreciation. *See* Ind.Code Ann. § 6–1.1–31–6 (West 1989); *see also* Ind.Admin.Code tit. 50, r. 2.1–4–3(g) (1992) (codified in present form at *id.* r. 2.2–12–1 (1996)). However, under the current

sky then compared this estimate with the reproduction cost of the wall as determined under the State Board's regulations. After the application of the A grade factor, the State Board's regulations resulted in the reproduction cost of the wall being $18,656.64.[4] (Pet'r Br. at 5). Zakutansky then applied a grade factor of D–1 to arrive at an adjusted reproduction cost of $8,162.28. (Pet'r Br. at 5). This figure is close to Mr. Sammons' estimate of the actual reproduction cost of the wall. Therefore, Zakutansky argues that the wall should be assigned a grade of D–1.

Although such quantitative evidence might be convincing under a fair market value system, Indiana does not value property based on its fair market value. *See* IND.CODE ANN. § 6–1.1–31–6. However, such evidence is probative of the quality of materials, construction, and design used in making the wall, which in turn affect the grade to be applied. *See* IND.ADMIN.CODE tit. 50, r. 2.1–4–3. With this in mind, this Court must determine whether the State Board's final determination is supported by substantial evidence. The Court finds that it is not.

The State Board determined that an A grade applied to the masonry wall because it was sloped and contained steps. However, the State Board made no effort to disclose why a sloped wall or concrete steps warrant an A grade as opposed to a B grade. Although the court acknowledges that such items might add to the reproduction cost of the wall, there is no evidence of how much cost these items would add. *Cf. Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1238 (Ind.Tax Ct.1998). Therefore, there is no evidence supporting the 160% multiplier that accompanies an A grade.[5] The State Board failed to disclose how the concrete

steps and a sloped wall increased the reproduction cost by 160%. The State Board's argument that Mr. Ott considered the items is an insufficient basis to support a final determination. The State Board cannot support its findings with the unsupported subjective opinions of its hearing officers. *See Canal Square,* 694 N.E.2d at 808; *see also Corey v. State Bd. of Tax Comm'rs,* 674 N.E.2d 1062, 1066 (Ind.Tax Ct.1997).

Moreover, Zakutansky has demonstrated that the quality of the wall is not as high as the State Board's A grade would indicate. Zakutansky provided evidence that the wall is not reinforced with footings or metal rods, and that the quality of materials and workmanship is not of the highest quality. The State Board has not provided a reason for discounting Zakutansky's evidence. The State Board is obligated to consider evidence presented by the taxpayer and deal with that evidence in a meaningful manner. *See Canal Square,* 694 N.E.2d at 805. Zakutansky has demonstrated that the A grade is unsupported by substantial evidence, and he has shown the State Board has arbitrarily and capriciously failed to consider the evidence presented. *See Clark,* 694 N.E.2d at 1234–35 (requirement that State Board consider taxpayer's evidence stems from the requirement that the State Board not act arbitrarily and capriciously). Therefore, the State Board's final determination of an A grade is unsupported by substantial evidence and is arbitrary and capricious.

■ The second issue raised by Zakutansky is the assessment of the buildings located on the marina land. Zakutansky argues that the buildings were assessed using the incorrect cost schedules. *See* IND.ADMIN.CODE tit. 50, r. 2.1–4–5 (1989) (presently codified at id.

---

state of the law, the actual cost of reproducing the wall is not determinative of the wall's True Tax Value. *See Dawkins v. State Bd. of Tax Comm'rs,* 659 N.E.2d 706, 709 (Ind.Tax Ct.1995); *see also Town of St. John v. State Bd. of Tax Comm'rs,* 690 N.E.2d 370, 374 (Ind.Tax Ct.1997), *review granted.*

**4.** This dollar figure was arrived at using the per lineal foot method.

**5.** The regulations deem a C grade to be equal to 100% of the reproduction cost. *See* IND.AD-

MIN.CODE tit. 50, r. 2.1–4–3. According to the regulations, an A grade is equal to 160% of the reproduction cost. *Id.* The Court engaged in a lengthy discussion of the operation of the grade system with respect to residential properties in *Garcia v. State Bd. of Tax Comm'rs,* 694 N.E.2d 794 (Ind.Tax Ct.1998). Although this case deals with commercial properties, the general discussion regarding the operation of the grade system contained in *Garcia* is applicable to this case. Therefore, the Court does not repeat it here.

r. 2.2–11–6 (1996)). Specifically, Zakutansky argues that the State Board incorrectly used the General Commercial–Mercantile cost schedule (GCM schedule) based on his use of the property. *Id.* Zakutansky argues that the property should be assessed using the residential or agricultural cost schedules because the buildings are properly categorized as pole barns. *See id.* r. 2.1–3–5 (1992) (presently codified at *id.* r. 2.2–9–6 (1996)); *see also id.* r. 2.1–3–6 (1992) (presently codified at *id.* r. 2.2–9–5 (1996)) (regulation containing models of pole barns).

The State Board counters with three arguments. First, the State Board argues that the assessor is given discretion to select the appropriate model and cost schedule based on "class and usage." (Resp't Br. at 6). Therefore, the selection of the GCM schedule by the State Board was proper. Second, the State Board argues that the physical features of the building were considered in determining the appropriate cost schedule to use and "adjustments were made to reflect the quality of the construction." (Resp't Br. at 6–7). Finally, the State Board argues that "with appropriate adjustments . . . the pricing would be very similar for a pole barn and a commercial building." (Resp't Br. at 7).

The buildings on Zakutansky's property are basic metal pole buildings.[6] The fact that those buildings are used as storage for boats, or are located at a facility called a marina, is not determinative of which cost schedule to use. *See Herb v. State Bd. of Tax Comm'rs*, 656 N.E.2d 890, 893 (Ind.Tax Ct.1995). "[T]he actual use of the property is not a determinative factor in selecting the appropriate model, but merely a starting point. As a result, *the model that most closely resembles the subject improvement with respect to physical features is to be used, regardless of the model's name.*" *Id.* (emphasis added). Thus, the cost schedule for pricing pole barns is the correct cost schedule to use in this instance.

Additionally, the Court notes that the State Board's consideration of the quality of the building and an adjustment based on that quality are of no avail. Nor is the fact that the adjusted pricing using a commercial cost schedule would be very close to that of a pole barn. The taxpayer is entitled to have his property assessed using the correct cost schedule. Only after this is done may adjustments for quality be made. Moreover, the fact that the State Board's assessment was close to the assessment it would have arrived at using the appropriate schedule does nothing to aid its position. Simply put, Zakutansky's pole buildings should have been valued using the cost schedule for pole buildings.[7] Therefore, this issue is REMANDED to the State Board for further consideration.

▮ Zakutansky's third argument is that the land, on which the marina is located, is assessed too high. Specifically, Zakutansky claims that the presence of an underground pipeline and an easement restrict the use of the land because their presence prevents construction on certain portions of the property. Additionally, Zakutansky claims that the property is not served by any utilities except electricity. All this, according to Zakutansky, renders the $15,000 per acre assessment of the property too high. Zakutansky argues that the Porter County Land Order[8] should be amended to reduce the per acre value of his land, or in the alternative a negative influence factor should be applied.

6. Zakutansky submitted photographs into evidence that show his buildings closely resemble the pole buildings contained in the State Board models. *See* IND ADMIN.CODE tit. 50, r. 2.1–3–5. Further, that Zakutansky's buildings are structurally similar to the model pole buildings was not disputed by the State Board.

7. The Court notes that the procedures for pricing buildings such as Zakutansky's have been altered since the 1989 assessment at issue in this case. Bulletin 91–8, issued in 1991, provided for a 50% reduction in the base rate for pre-engineered, kit-type buildings. However, this kit-building reduction is not available retroactively and is therefore not available to Zakutansky for the 1989 assessment. *See Bock Prods., Inc. v. State Bd. of Tax Comm'rs*, 683 N.E.2d 1368, 1372 (Ind.Tax Ct.1997).

8. Land orders are promulgated for use by county assessing officials in valuing property within the county. *See* IND.CODE ANN. § 6–1.1–4–13.6 (West 1989) (amended 1993 & 1997); *see also Talesnick v. State Bd. of Tax Comm'rs*, 693 N.E.2d 657, 658 (Ind.Tax Ct.1998). In this case, Zakutansky's land was valued at $15,000 pursuant to the Porter County Land Order. (Resp't Br. at 1).

The Court has recently examined a similar factual situation.

In *Talesnick v. State Bd. of Tax Comm'rs,* 693 N.E.2d 657 (Ind.Tax Ct.1998), the Court was called on to determine whether a taxpayer's property was incorrectly valued. The taxpayer owned property adjacent to a reservoir. The property was subject to a water flowage easement that placed some restrictions on the use of the land along the banks of the reservoir. *Id.* at 658. In addition to this, the taxpayer's property did not have access to city water, sewers, fire hydrants, or even city maintained streets. *Id.* The taxpayer's property was valued at the maximum value allowed under the county land order. *Id.; see also* IND.CODE ANN. § 6–1.1–4–13.6 (West 1989) (amended 1993 & 1997). This value was identical to other properties surrounding the reservoir that were less encumbered by the water flowage easement and had access to the "infrastructure" that the taxpayer's property lacked. *Id.* at 660–61.

The Court held that the State Board was required to compare the taxpayer's property to those around it. *Id.* at 660. This would allow the State Board to more accurately determine the appropriate land value. Also, the Court noted that the application of a negative influence factor may be appropriate. *Id.* This was due to the lack of access to an "infrastructure" and the loss in value of land due to the presence of an easement. *Id.*

(citing *Poracky v. State Bd. of Tax Comm'rs,* 635 N.E.2d 235, 238 (Ind.Tax Ct.1994)).

Like *Talesnick,* the present case presents a question of whether the State Board accurately valued property when compared to others around it. Zakutansky presented evidence that similar properties nearby, with greater access to utility service, were assessed at a lower rate than his property. Also, Zakutansky demonstrated that his property was encumbered by an easement restricting the use of his property. The Court notes that its decision in *Talesnick* was not available to the parties until after they had submitted briefs and this case was taken under advisement by the Court. Therefore, this Court REMANDS this issue to the State Board for further consideration in light of *Talesnick.*

## CONCLUSION

For the foregoing reasons, this Court REMANDS this matter to the State Board for further consideration consistent with this opinion.