Stanley TALESNICK and Claudia Talesnick,[1] Petitioners,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

No. 49T10–9810–TA–127.

Tax Court of Indiana.

Oct. 1, 2001.

1. Claudia Talesnick died while this case was pending; therefore, Stanley Talesnick is now the sole petitioner. (Trial Tr. at 4.)

the first acre on Talesnick's property; and

II. Whether the State Board properly refused to apply a negative influence factor for the water flowage easement on Talesnick's property.[3]

For the reasons stated below, the Court GRANTS Talesnick's motion for summary judgment and DENIES the State Board's cross motion for summary judgment. Accordingly, the State Board's determination is REVERSED and this case REMANDED to the State Board for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Talesnick's real property consists of 2.717 acres of land and is located in Eagle Ridge subdivision along Eagle Creek Reservoir in Marion County. Eagle Ridge does not have the infrastructure—city water, sewers, fire hydrants, or city maintained streets—that other subdivisions surrounding the reservoir possess.[4] Talesnick's property includes a water flowage easement that encumbers thirty-seven percent of his land.

In accordance with Indiana Code § 6-1.1-4-13.6, the Marion County Land Valuation Commission and the State Board promulgated a Land Order for use in the 1989 general reassessment and subsequent years. Under that order, the base rate values in Talesnick's subdivision ranged between $90,000 to $110,000 for the first acre and between $2,000 to $4,000 for each

Stanley Talesnick,[2] John O. Moss, III, Leagre Chandler & Millard, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Petitioner, Stanley Talesnick, appeals the final determination of the State Board of Tax Commissioners (State Board) establishing the assessed value of his land and improvements as of March 1, 1989. Talesnick moved for summary judgment and presented several issues, which the Court restates as:

I. Whether the State Board properly applied a base rate value of $4,000 per acre for any acreage beyond

---

2. Stanley Talesnick is the attorney as well as the petitioner in this matter.

3. Talesnick also claimed that the State Board erroneously increased the square footage measurement of his basement even though the parties stipulated that the correct measurement was 3,080 square feet. (Pet'r Summary Judgment Br. at 11–12; *see also* Pet'r Ex. F at 4.) The State Board has stipulated that it does not oppose the granting of sum-

mary judgment on the basement measurement issue. (Resp't Summary Judgment Br. at 1, 2 n. 1; Trial Tr. at 9.) Accordingly, this Court GRANTS summary judgment on this issue in favor of Talesnick and REMANDS this issue to the State Board to apply the correct measurement to the basement.

4. These subdivisions include Bay Colony, Green Braes, and Traders Cove.

additional acre.[5] The township assessor valued all of Talesnick's acres at the highest values under the land order and did not apply a negative influence factor to his land. The assessor valued Talesnick's 2.717 acres at $116,910 and valued the improvements at $194,100, and the Marion County Board of Review sustained these values.

On October 18, 1990, Talesnick filed a Form 131 Petition with the State Board claiming, in part, that the base rate valuation for his acreage should be reduced and that a negative influence factor should have been applied to his property to account for the water flowage easement. After a hearing, the State Board denied Talesnick's petition and increased the assessed value of his home.

Talesnick subsequently appealed to this Court. On March 20, 1998, this Court ordered the petition remanded to the State Board because Talesnick had made a prima facie case that his land was incorrectly valued and because the State Board had failed to support its determination with substantial evidence. *Talesnick v. State Bd. of Tax Comm'rs*, 693 N.E.2d 657, 661–62 (Ind.Tax Ct.1998). In regard to the base rate value, this Court found that the State Board's reasoning that Talesnick's land should be valued at $110,000 merely because it was "on the water" had failed to rebut Talesnick's prima facie case that his property should not be valued as highly as land "on the water" in the surrounding subdivisions. *Id.* at 660–61. In regard to the negative influence factor, this Court found that Talesnick had presented evidence, including testimony and maps, that showed that the water flowage easement encroached on Talesnick's land to a great-

er extent than it did on the other property surrounding the reservoir. *Id.* at 661. This Court rejected the State Board's argument that the land order specifically accounted for the easement on Talesnick's land and remanded the issue for the State Board to determine "whether [Talesnick's] land is encumbered by the easement to an extent such that application of a negative influence factor is warranted." *Id.*

On July 21, 1998, the State Board conducted its remand hearing. On September 14, 1998, the State Board issued its final determination. The State Board found that county officials had failed to rebut Talesnick's prima facie evidence that the base rate values were incorrect. Therefore, the State Board reduced Talesnick's base rate value for his first acre from $110,000 to $90,000. The State Board refused to reduce the value for the additional acres valued at $4,000 because it found that Talesnick had waived the issue and that this Court's remand order only required that it determine whether Talesnick's land was incorrectly valued at $110,000 per acre. (State Bd. Tr., Ex. E at 9–10.) The State Board also refused to apply a negative influence factor to Talesnick's property because it concluded that the water flowage easement did not negatively affect the value of Talesnick's property anymore than it affected the value of other waterfront property in the same subdivision.

Talesnick filed this original tax appeal on October 15, 1998. On May 18, 1999, Talesnick filed a motion for summary judgment. On June 18, 1999, the State Board filed its response opposing the summary judgment motion and asked the Court to enter summary judgment in its favor.[6]

---

5. Under the land order, the base rate in the Bay Colony, Green Braes, and Traders Cove subdivisions also ranged between $90,000 to $110,000 for the first acre. (Pet'r Exs. E, F at 1.)

6. Pursuant to Indiana Trial Rule 56(B), the Court treats the State Board's request as a cross-motion for summary judgment. *Salin Bancshares, Inc. v. Indiana Dep't of Revenue*, 744 N.E.2d 588, 591 n. 6 (Ind.Tax Ct.2000).

Thereafter, the Court heard oral arguments on summary judgment and took the matter under advisement. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

 The Court gives great deference to the State Board's final determinations when the State Board acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1259, 1261 (Ind.Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind.Tax Ct.1998). Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See* Ind. Trial Rule 56(C). *See also W.H. Paige & Co. v. State Bd. of Tax Comm'rs,* 732 N.E.2d 269, 270 (Ind.Tax Ct.2000). Cross motions for summary judgment do not alter this standard. *W.H. Paige,* 732 N.E.2d at 270.

### Discussion

#### I. Base Rate Value

 Talesnick asserts that the base rate value for his additional 1.717 acres should be reduced from $4,000 to $2,000 per acre. Talesnick argues that after this Court found that he had made a prima facie showing that his property was incorrectly assessed, the State Board failed to rebut his evidence on remand. (Pet'r Summary Judgment Br. at 8–9.) At the remand hearing, Talesnick presented evidence, via an affidavit from Bradford West (a builder

and land developer), that his property value was reduced by $10,000 because of the lack a sewer, by $5,000 by the lack of city water, and by five percent because of the limited accessibility to the subdivision. (Pet'r Ex. I at 3–4.)

The State Board acknowledges that this Court remanded the base rate issue for Talesnick's first acre to the State Board to support with substantial evidence but argues that this Court's remand order did not include the additional acreage. (Resp't Summary Judgment Br. at 7.) The State Board further argues that it had already dealt with Talesnick's evidence regarding the lack of infrastructure in his subdivision when it reduced Talesnick's base rate value for his first acre by $20,000 and that this absence of city water, sewers, fire hydrants, and city maintained streets does not impact his additional acres because Talesnick does not have a house on those acres. (Resp't Summary Judgment Br. at 7–8; Trial Tr. at 29–30.)

In its prior opinion, this Court noted that Talesnick's land was assessed at $110,000 for the first acre and $4,000 for the additional acres and that although the Court referred to only the first acre's $110,000 value, "the Court's reasoning applie[d] to valuation of the *entire* parcel." *Talesnick,* 693 N.E.2d at 658 n. 4 (emphasis added). Therefore, this Court's remand order did require the State Board to support its final determination on the additional acreage issue with substantial evidence. Accordingly, the Court REMANDS this issue to the State Board for further consideration.

#### II. Negative Influence Factor

 Talesnick contends that the State Board erroneously declined to apply a negative influence factor to his land to account for the water flowage easement. (Pet'r Summary Judgment Br. at 10–11.) While the State Board admits that a water flowage easement exists on Talesnick's proper-

ty, it argues that Talesnick failed to make a prima facie showing that the value of his lot was more adversely affected than any of the other properties around the reservoir that had an easement. (Resp't Summary Judgment Br. at 9–10.)

 An influence factor "refers to a condition peculiar to the land that dictates an adjustment, either positive or negative, to the extended value to account for variations from the norm." IND. ADMIN. CODE tit. 50, r. 2.1–2–1(g) (1988) (codified in present form at *id.*, r. 2.2–4–10(a)(9) (2001)). To apply an influence factor, an assessor must identify the deviations from the norm in the property. *White Swan Realty v. State Bd. of Tax Comm'rs*, 712 N.E.2d 555, 562 (Ind.Tax Ct.1999), *review denied.* These deviations are then expressed as a percentage that represents the composite effect of the factor that influences the value. *Id.*; 50 IAC 2.1–2–1(g). The use of influence factors are appropriate for making adjustments to the value of land that is encumbered by an easement. *Talesnick*, 693 N.E.2d at 660 (citing *Poracky v. State Bd. of Tax Comm'rs*, 635 N.E.2d 235, 238 (Ind.Tax Ct.1994)).

At the prior trial, this Court found that Talesnick had made a prima facie case by presenting evidence that his water flowage easement "encumbers more of [his] property than it does [his] neighbors" and that the easement "encroaches on [his] land to a greater extent than it does the other land surrounding the reservoir." *Talesnick*, 693 N.E.2d at 660–61. At the remand hearing, Talesnick provided evidence, including testimony and maps, showing that: (1) properties around the reservoir are subject to a water flowage easement; (2) the area subject to the water easement on these properties varied;

(3) the water flowage easement was determined by how much of the parcel of land was at or below 815 feet above sea level; (4) thirty-seven percent of his land is at or below 815 above sea level; (5) his easement encumbered thirty-seven percent of his property; (6) the easement prohibits him from constructing any kind of permanent improvement on that thirty-seven percent of his land; (7) because of the easement, his homesite had to sit back at a greater distance from the water's edge; and (8) the limitations associated with the easement entitled him to a twenty to twenty-five percent negative influence factor as compared to a similar property not subject to such limitations. (Pet'r Exs. C, D, F at 3–4, I at 3–4.)

 At the time of Talesnick's hearing, there was no guidance from the courts or from the State Board on how to quantify a negative influence factor. Because this Court has since provided such guidance, this Court REMANDS this issue to the State Board for further consideration in light of *Phelps Dodge v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1099, 1106 (Ind.Tax Ct.1999), *review denied.* In *Phelps Dodge*, this Court explained how a taxpayer may quantify an influence factor that affects his property. The Court stated that because influence factors "reflect a deviation from the market based range of values assigned to the property through the Land Order[,]" influence factors can be quantified by using "market data in order to effectively reflect the actual deviation from the market value assigned a piece of property through the Land Order." *Phelps Dodge*, 705 N.E.2d at 1106. Talesnick is reminded that on remand he has the burden to produce "probative evidence that would support an application of a negative influence factor and a quantification of that influence factor." *Id.*[7] Thereafter, the

---

7. Petitioner is also reminded that a mere opinion or conclusion does not constitute pro-

bative evidence. *Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 211 (Ind.

State Board is to deal with any evidence in a meaningful manner and, if necessary, to support its decision with substantial evidence. *See Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 234 (Ind. Tax Ct.2000), *review denied.*

## CONCLUSION

For the aforementioned reasons, this Court GRANTS Talesnick's motion for summary judgment and DENIES the State Board's cross motion for summary judgment.[8] Accordingly, the State Board's determination is REVERSED and this case REMANDED to the State Board for further proceedings consistent with this opinion.

Tax Ct.2000), *review denied; see also Wirth v. State Bd. of Tax Comm'rs*, 613 N.E.2d 874, 878 (Ind.Tax Ct.1993) (finding expert's opinion as to application of negative influence factor, without additional evidence, to be insufficient to overcome State Board's discretion).

8. In addition to granting summary judgment in its favor, Talesnick asks this Court to: (1) find the State Board in contempt for failing to follow this Court's previous instructions on remand; (2) order the State Board to pay attorney's fees of $7,500; and (3) retain jurisdiction of this case to ensure the State Board's compliance with the Court's order on remand. (Pet'r Summary Judgment Br. at 15; Trial Tr. at 24–26.) This Court declines to do so. However, if the State Board fails to follow this Court's instructions on remand, Talesnick may appeal to this Court from the State Board's final determination, and the Court will consider his motions for contempt and attorney's fees at that time.