**KOOSHTARD PROPERTY VIII, LLC, Petitioner,**

v.

**SHELBY COUNTY ASSESSOR, Respondent.**

No. 49T10–0806–TA–40.

Tax Court of Indiana.

March 19, 2009.

Timothy J. Vrana, Timothy J. Vrana LLC, Columbus, IN, Attorney for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, John D. Snethen, Timothy A. Schultz, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Kooshtard Property VIII, LLC (Kooshtard) challenges the final determination of the Indiana Board of Tax Review (Indiana Board) affirming the 2002 assessment of its real property. Kooshtard presents one issue on appeal, which the Court restates as: whether the Indiana Board erred in affirming the application of only one nega-

tive influence factor of 50% to Kooshtard's land.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Kooshtard owns 8.97 acres of land along State Road 44 in Shelbyville, Indiana.[1] For the March 1, 2002 assessment, Kooshtard's land was assigned an assessed value of $1,047,000. In arriving at this value, the Addison Township Assessor (Assessor) designated one acre as "primary" with a base rate value of $250,000; the remaining 7.97 acres were designated "undeveloped usable" with a base rate of $200,000 an acre. In addition, the Assessor assigned the 7.97 acres a negative influence factor of 50%.[2] At the time, Kooshtard assumed that the negative influence factor was to account for the land's size and shape.[3] (*See* Cert. Admin. R. at 105–06 (footnote added).)

Kooshtard subsequently challenged the assessment with the Shelby County Property Tax Assessment Board of Appeals (PTABOA), claiming that the land's assessed value should be reduced further to account for the fact that the land was encumbered by a power line easement. (*See* Cert. Admin. R. at 9–10.) The PTABOA denied Kooshtard's request for relief on the basis that "a 50% influence factor

has already been given to consider power lines." (Cert. Admin. R. at 6–7.) On June 22, 2004, Kooshtard appealed its assessment to the Indiana Board.

On May 10, 2006, the Indiana Board conducted an administrative hearing on Kooshtard's appeal. During the hearing, Kooshtard claimed that its land was entitled to two separate negative influence factors of 50%: one for its land's size and shape, the other for the power line easement. Kooshtard explained, however, that to the extent the negative influence factor it received was actually for the power lines, then it sought the Indiana Board's consideration on the one for size and shape. On July 26, 2006, the Indiana Board issued a final determination affirming the assessment.

On August 30, 2006, Kooshtard filed an original tax appeal. While the case was pending with this Court, the parties filed a joint motion to remand the matter to the Indiana Board "to clarify whether the [negative] 50% influence factor it affirmed was for the power lines or for size and shape." (Joint Mot. to Remand, Oct. 12, 2006.) The Court granted their motion on October 13, 2006. On May 7, 2008, the Indiana Board issued an order on remand, which stated in relevant part:

1. A service station is located on the property. The assessment of this improvement, however, is not at issue in this case.

2. An influence factor is a multiplier, either positive or negative, that is applied to a land assessment to reflect a condition or feature inconsistent with the norm for the neighborhood. *See* Real Property Assessment Guidelines for 2002—Version A (2004 Reprint) (hereinafter, Guidelines) (incorporated by reference at 50 Ind. Admin Code 2.3–1–2(c)), Bk. 1, Ch. 2 at 11, 89–90, 93–94; Bk. 2, Glossary at 10. Influence factors may be applied to commercial and industrial land to reflect one of nine conditions peculiar to the land in question. Guidelines, Bk. 1, Ch. 2 at 94–95 (categoriz-

ing influence factors by "topography," "under-improvement," "excess frontage," "shape or size," "misimprovement," "restrictions," "traffic flow," "view," or "corner influence").

3. This was a reasonable assumption, given the fact that 1) the applicable neighborhood valuation form recommended that a negative influence factor of 50% be applied to parcels between five and ten acres, and 2) Kooshtard's property record card indicated an influence factor code of "4" which, per Indiana's assessment guidelines, meant "shape or size." (*See* Cert. Admin. R. at 48–50.) (*See also* Pet'r Br. at 2.)

2. The property record card [ ] shows that 7.97 acres of this property was allowed a [negative] 50% influence factor, but it does not specify the reason.[4] The ... PTABOA [ ] documents that the 50% influence factor was in consideration of power lines. [Kooshtard] made it clear that it was not seeking any change regarding that point.

3. Paragraph 15b of the Board's determination recognized the status quo on this point, which was "the negative 50% influence factor assigned to the parcel to account for the utility easement."

4. Paragraph 15b also recognized [Kooshtard]'s contention that the entire property should receive an additional 50% influence factor for size. This point is where the Petitioner sought a change on the assessment relating to an influence factor.

5. The Board did not "affirm" anything about the specific methodology used to determine the assessment. [Rather, it] determined that neither party proved the market value-in-use was anything other than the existing assessment. Consequently, the Board ordered that the assessment should not be changed.

(Pet'r V. Pet. for Judicial Review, Ex. A at 3 (footnote added).)

Kooshtard appealed the remand order on June 10, 2008.[5] The Court heard the parties' oral arguments on February 20, 2009. Additional facts will be supplied as necessary.

---

**4.** This particular finding, however, is not supported by the evidence. *See supra* note 3.

**5.** Kooshtard did so by initiating a second original tax appeal. (*See* Pet'r V. Pet. for Judicial Review.) On June 23, 2008, the Court consolidated Kooshtard's two appeals under the above-captioned cause number.

## ANALYSIS AND OPINION

### Standard of Review

When this Court reviews an Indiana Board final determination, it is limited to determining whether it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2009). The party seeking to overturn the Indiana Board's final determination bears the burden of demonstrating its invalidity. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003).

### Discussion

On appeal, Kooshtard argues that the Indiana Board's final determination is arbitrary and capricious. (*See* Oral Argument Tr. at 3.) More specifically, it argues that the Indiana Board, in affirming the application of one negative influence factor of 50%, ignored the fact that local assessing officials actually approved the application of two negative influence factors of 50%. (*See* Pet'r Br. at 1, 5.) As a result, it contends that the Indiana Board should have determined that its land's assessed value was $523,500.[6] (*See* Pet'r Br. at 3

---

**6.** More specifically, Kooshtard maintains that the entire parcel (i.e., all 8.97 acres) is entitled to a 50% negative influence factor to account for size and shape. Thus, the first acre should be valued at $125,000 ($250,000 × 50%), and the other 7.97 acres at $797,000 (($200,000 × 7.97) × 50%). In turn, the 7.97 acres, having already received a negative influence factor of 50% to account for the pow-

(footnote added).) (*See also* Cert. Admin. R. at 85.) The Indiana Board rejected Kooshtard's argument—and rightly so.

■ First, Kooshtard is mistaken in its belief that it has been approved for two separate negative influence factors of 50%. As stated earlier, Kooshtard assumed that it received the initial influence factor to account for the size and shape of its land. While this assumption was a reasonable one, *see supra* notes 2 and 3, Kooshtard was subsequently informed that the adjustment was actually to account for the power line encumbrance. It is clear from the certified administrative record that Kooshtard knew this, acquiesced to this, and, as a result, presented its case at the Indiana Board hearing to support the application of a negative influence factor of 50% to account for its land's size and shape. (*See* Cert. Admin. R. at 56, 80–83, 104–06.)

■ Second, in presenting that case to the Indiana Board, Kooshtard was required to submit probative evidence that (1) identified its land's deviation from the norm and (2) quantified the impact of that deviation on the land's value. *See Talesnick v. State Bd. of Tax Comm'rs,* 756 N.E.2d 1104, 1108 (Ind. Tax Ct.2001). Instead, Kooshtard merely presented a copy of the applicable neighborhood valuation form which "recommended" a negative influence factor of 50% for tracts between five and ten acres.[7] (*See* Cert. Admin. R. at 49.) As the Indiana Board explained, this evidence does not show a causal link between the size of Kooshtard's land and a reduction in its value by another 50%. (*See* Cert. Admin. R. at 22.) Therefore, the Court cannot say that the Indiana Board's final determination was improper.

## CONCLUSION

Kooshtard has done nothing more than assert that the applicable neighborhood valuation form "recommends" a negative influence factor to account for its land's size and shape. Kooshtard, however, was required to present a calculation which quantified (and would have possibly supported) the *alleged* loss in value to its property due to that condition. Consequently, the Indiana Board did not err when it held that Kooshtard did not make a prima facie case that it was entitled to a second negative influence factor of 50% to account for its land's size and shape. The Indiana Board's final determination is therefore AFFIRMED.

---

er line easement, should then be $398,500. As a result, the total assessed value of the land should be $523,500 ($125,000 + $398,500).

**7.** To recommend is to "to offer or suggest[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY at 1897 (2002). Thus, the term is discretionary, not mandatory.