Elizabeth M. PORACKY, Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

No. 45T10–9207–TA–00049.

Tax Court of Indiana.

June 8, 1994.

William S. Suarez, Portage, for petitioner.

Pamela Carter, Atty. Gen. of Indiana, Thomas K. Caldwell and Marilyn S. Meighen Deputy Attys. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Elizabeth M. Poracky (Poracky), appeals the final determination of the Respondent, the State Board of Tax Commissioners (the State Board), assessing her real property for 1989.

## ISSUES

I. Whether the Porter County Land Valuation Order (the Land Order) correctly determined the front foot values for Poracky's land.

II. Whether the State Board abused its discretion in instructing the Porter County Board of Review not to change the land values set out in the Land Order.

## FACTS

The Porter County Land Valuation Commission (the Commission) researched land values in Porter County and then submitted a proposed land order to the State Board on September 17, 1987. The State Board held a hearing on the proposed values on March 14, 1989. As a result of the hearing, the State Board made minimal changes to the proposed order, none of which affected residential property. On March 31, 1989, the State Board adopted the Land Order. The Land Order divided Ogden Dunes into various sections with rates of $100, $125, $150, $200, $350, $400, $500, and $900 per front foot. The $900 per front foot value was assigned to lakefront[1] property in Ogden Dunes.

On April 6, 1990, the Porter County Assessor, on behalf of the Porter County Board of Review, sent a letter to the State Board, appealing the Land Order and proposing an across-the-board influence factor to be applied to each lot within various sections of Ogden Dunes. The State Board, after reviewing the Land Order and inspecting the land in Ogden Dunes, stated it could not allow the Porter County Board of Review to apply across-the-board influence factor reductions to the lots in Ogden Dunes.

Poracky owns lakefront residential real property in Ogden Dunes, Portage, Porter County, Indiana. Poracky's land was assessed at $25,500 for the 1989 assessment. Poracky petitioned the Porter County Board of Review for reassessment of her property. In its reassessment, the Porter County Board of Review followed the $900 per front foot valuation set out in the Land Order, and it also applied a 25 percent negative influence

factor to the 1989 assessment to account for inadequate seawall protection.

On July 27, 1990, Poracky filed a Form 131 Petition for Reassessment with the State Board. The State Board held a hearing and inspected Poracky's land on April 16, 1991. The State Board hearing officer applied the $900 per front foot valuation to the property and also recommended removal of the 25 percent negative influence factor because any erosion occurring as a result of inadequate seawalls occurred on the public beach and not on Poracky's land. The State Board adopted the hearing officer's recommendations and, on May 29, 1992, issued its final determination.

Poracky now appeals. Additional facts will be provided as necessary.

## STANDARD OF REVIEW

■ "The State Board is constitutionally and statutorily mandated to 'interpret the property tax laws of this state ... and see that all property assessments are made in the manner provided by law.'" *Auburn Foundry, Inc. v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 628 N.E.2d 1260, 1263 (quoting *Bielski v. Zorn* (1994), Ind.Tax, 627 N.E.2d 880, 884–85). "To accomplish its mission, the State Board has a great deal of discretion." *Id.* (citing *Miller v. Gibson County Solid Waste Management Dist.* (1993), Ind.Tax, 622 N.E.2d 248, 259). As part of that discretion, the State Board promulgates land orders, which are administrative rules subject to the same rules of construction as statutes. *Mahan v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 622 N.E.2d 1058, 1062 (citing *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 586, *aff'd* (1992), Ind., 585 N.E.2d 1336).

In determining the validity of an administrative rule, the only concern of the court is to ascertain whether the will of the Legislature has been obeyed. *Van Allen v. State* (1984), Ind.App., 467 N.E.2d 1210. On review, the court must consider whether the rule lies within the scope of the authority conferred, whether the regula-

1. "Lakefront" refers to land fronting on Lake Michigan.

tion is consistent with and reasonably necessary to carry out the purposes of the statute, and whether the rule is reasonable. *Id.* at 1213.

*State Bd. of Registration for Land Surveyors v. Bender* (1993), Ind.App., 626 N.E.2d 491, 495. IND.CODE 6–1.1–4–13.6 establishes specific procedures for the development of county land value orders. The statute's purpose is to help the State Board ensure that land values throughout the state are set in conformity with the constitutional and statutory commands of uniformity and equality in assessment and tax rate. *See Bielski,* 627 N.E.2d 880 (discussing uniformity and equality requirements).

■ Courts review administrative rules with more latitude than they do administrative adjudications. *See Hills v. Area Plan Comm'n of Vermillion County* (1981), Ind. App., 416 N.E.2d 456, 461 (citing *City of Anderson v. Associated Furniture & Appliances, Inc.* (1979), Ind.App., 398 N.E.2d 1321). The party complaining that the rule is invalid bears the burden to show an administrative rule is not in accordance with law. *See Vanderburgh County Bd. of Comm'rs v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 666 (citing *Hills,* 416 N.E.2d at 462).

## DISCUSSION AND DECISION

### I

Poracky contends that the Land Order incorrectly determines front foot values for Ogden Dunes, specifically for her property. In doing so, she makes numerous assertions.

### A. *Disparity Among Assessments*

The Land Order divides Ogden Dunes into various sections. Lakefront property in Ogden Dunes is assessed at $900 per front foot. Non-lakefront property is assessed at $100, $125, $150, $200, $350, $400, or $500 per front foot. Poracky argues the disparity among the front foot rates is arbitrary. For example, non-lakefront property situated at the eastern peak of Summit Road in Ogden Dunes has a panoramic view of Lake Michigan and the Chicago skyline, and is assessed at $100 per front foot. Poracky argues that although these lots do not have the immediate access to Lake Michigan that lots adjacent to Lake Michigan have, they do not suffer from the same type of erosion as the lots adjacent to Lake Michigan.

■ "The location of [property] is of paramount importance with regard to its value." PROPERTY TAXATION (Jerold Janata ed., 2d. ed. 1993), 234. The uniqueness of waterfront property as compared to non-waterfront property is axiomatic. In fact, disputes stemming from this unique status are common. *See, e.g., Lucas v. South Carolina Coastal Council* (1992), —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798; *Nollan v. California Coastal Comm'n* (1987), 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677.

Nevertheless, influence factors are available to adjust Land Order values to take into account positive and negative attributes of particular property. *See* 50 I.A.C. 2.1–2–1(g). In the case at bar, the State Board recommended that influence factors be applied to Ogden Dunes property to reflect the presence of sea walls, erosion protection, limited views of Lake Michigan, variations in lot size for excess frontage or excess depth, topography problems including parcels that are low and require fill or parcels in the ridge area requiring site preparation, and also for views of Lake Michigan and/or Chicago. *Respondent's Exhibit K* at 2, 3. The evidence presented at trial shows: (1) that some properties in Ogden Dunes not adjacent to Lake Michigan have many of the same attributes as Poracky's land, such as views of Lake Michigan and Chicago; and (2) that other non-lakefront properties in Ogden Dunes do not. There was no evidence that influence factors were not applied for those positive attributes. Moreover, Poracky failed to show that the properties similar to hers were being assessed and taxed any differently. Thus, while disparity exists among the Land Order values in Ogden Dunes, Poracky failed to show that the disparity is inappropriate given the varying land attributes.

### B. *Sufficient Sales to Determine Land Values in the Land Order*

■ Poracky also argues that the Land Order is arbitrary and capricious because the

Commission did not consider a sufficient number of sales to determine the land values. In establishing the Land Order, the Commission considered a number of sales in Ogden Dunes for the period 1983 through 1986 pursuant to 50 I.A.C. 2.1–2–1(a).[2] 50 I.A.C. 2.1–2–1(a) provides in pertinent part:

> The County Land Valuation Commission should use plat maps or recorded plats as land value maps.... [L]and value maps should show outlines of blocks, streets, and alleys, and should include all lots and their dimensions. This permits the insertion of unit value figures on street frontages. Each neighborhood can be delineated based on characteristics that distinguish it from surrounding neighborhoods, such as value ranges of improvements, zoning, or other restrictions on land use. Neighborhood boundaries may be drawn based on these kinds of characteristics, or may coincide with major roads, waterways, or other geographic features.

> Land real estate agents and brokers are the best source of sales information. The Commission should ask agents and brokers to examine and report as many sales as possible, and to organize the sales into geographic or neighborhood areas.... Once sales have been posted and analyzed, values can be determined based on the appropriate unit of measurement (unit value).

Richard Adomatis, a member of the Commission, testified at trial that the Commission considered numerous sales in Ogden Dunes and surrounding areas, as well as the opinions of local assessors to determine the front foot values for Ogden Dunes. Approximately twenty sales in Ogden Dunes were considered; only two of those sales involved lakefront property. Adomatis further testified that although the two lakefront property sales were the only sales of lakefront property during the relevant period, they were sufficient to establish a market of the reasonable value of lakefront property in Ogden Dunes.

**2.** The sales comparison method is a well recognized means for determining land value. *See*

The Commission followed the method to establish the land values as provided by 50 I.A.C. 2.1–2–1. The Land Order is based on a sufficient number of comparable sales. Poracky failed to show the Land Order violates the purpose of IC 6–1.1–4–13.6. The Land Order is valid.

### C. Consideration of Erosion and Numerous Easements

■ Next, Poracky argues that the Land Order does not accurately represent the value of her property because it does not consider the extensive erosion and the numerous public easements present along the beach. The State Board, however, maintains that although the Land Order itself does not directly address these problems, assessors can make adjustments on a lot by lot basis through the use of influence factors. Influence factors are appropriate for both erosion and easement problems. *See* 50 I.A.C. 2.1–2–1(g).

In its consideration of Poracky's petition for reassessment, the State Board determined that erosion has occurred on public property only, not on Poracky's property. Poracky presented no evidence other than her opinion that influence factors should have been applied to account for erosion and easements to her land. This is insufficient to overcome her burden. Therefore, the State Board's determination with respect to the application of influence factors is supported by the evidence and is not an abuse of discretion.

### II

■ Poracky also contends that the State Board's instruction to the County Board not to apply an across-the-board influence factor, which would have changed the applicable land values in the Land Order, was an abuse of the State Board's discretion. In *Mahan*, this court reviewed the statutory means for requesting a change of or challenging a Land Order:

> [IND.CODE] 6–1.1–4–13.6, passed by the legislature in preparation for the 1989 gen-

PROPERTY TAXATION, *supra,* at 132.

eral reassessment, provided for the establishment of county land valuation commissions throughout the state. Each commission was to determine the values of all commercial, industrial, and residential land within the county. IC 6–1.1–4–13.6(e). Subsequently, the State Board was to review the determinations made by the commission and make the modifications it deemed necessary to provide uniformity and equality. IC 6–1.1–4–13.6(f). After the State Board had completed its review, it was required to 'give notice to the county and township assessors of its decision on the values. *Within twenty (20) days after that notice, the county assessor or any township assessor in the county may appeal the values to the state board.* The state board shall hold a hearing on the appeal in the county. The state board shall give notice of the hearing under IC 5–3–1.' IC 6–1.1–4–13.6(g). The final stage in the process provided for dissemination of the State Board's final decision: '[t]he county assessor shall notify all township assessors in the county of the values as determined by the commission and as modified by the state board on review or on appeal. *Township assessors shall use the values as determined by the commission and modified by the state board in making assessments.* IC 6–1.1–4–13.6(h).

*Mahan,* 622 N.E.2d at 1061 (emphasis in original and added).

3. This does not imply that it would be an abuse of discretion to grant an untimely request. *See Mahan,* 622 N.E.2d at 1062; *State Bd. of Tax*

IC 6–1.1–4–13.6(g) specifically requires that a challenge to land orders be made "[w]ithin twenty (20) days after [the State Board's] notice [of its decision on the values]." In this case, the State Board adopted the Land Order on March 31, 1989. Hence, the Porter County assessor was required to challenge on or before April 20, 1989. He did not. Instead, he challenged the Land Order on April 5, 1990, nearly 370 days after its adoption by the State Board. An appeal of a land order, just as an appeal of a judgment or order, must follow the prescribed procedural mandates. *See Board of Comm'rs of Lake County v. Foster* (1993), Ind.App., 614 N.E.2d 949, 950. Thus, the Porter County assessor's challenge was untimely. It can hardly be said that the State Board abused its discretion in denying the Porter County assessor's request to change the Land Order when the right to make such a request has expired.[3]

### CONCLUSION

For the reasons stated, the court AFFIRMS the State Board's final determination.

*Comm'rs v. New Energy Co.* (1992), Ind.App., 585 N.E.2d 38.