**PHELPS DODGE, Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS,**
**Respondent.**

No. 49T10–9701–TA–00097

Tax Court of Indiana.

Feb. 18, 1999.

1100

Curtis J. Dickinson, David L. Pippen, Dickinson & Abel, Indianapolis, Indiana, Attorneys for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana Indianapolis, Indiana, Angela L. Mansfield, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

Phelps Dodge ("Phelps") appeals the final determination of the State Board of Tax Commissioners ("State Board") fixing the assessed value of Phelps' property as of March 1, 1992. Phelps presents four issues for this Court's consideration which the Court restates as follows:

I. Whether the State Board's final determinations with regard to the obsolescence depreciation of the subject improvements were without substantial evidentiary support.

II. Whether the State Board's final determinations with regard to the condition of the subject improvements were without substantial evidentiary support.

III. Whether the State Board's final determinations with regard to negative influence factors were without substantial evidentiary support.

IV. Whether the State Board determined the correct age of the subject improvements and utilized the correct physical depreciation in determining the physical depreciation of the subject improvements.

**FACTS AND PROCEDURAL HISTORY**

Phelps, an Indiana corporation, owns real property in Fort Wayne, Indiana. Phelps challenges the assessment of two parcels it owns, both consisting of land and improvements. Buildings 1A, 1B, 5, and 6 are on parcel # 67–0008–0016 ("Parcel # 16"). Buildings 1, 2, 2A, 2B, 2D and 3 are on parcel # 67–0008–0019 ("Parcel # 19"). In 1994, buildings 2, 2A, 2B, and 2D were "stripped down to the superstructure and rebuilt." (Ex. A at 20).

On November 17, 1992, Phelps filed two Form 131 Petitions for Review of Assessment[1] seeking review of the March 1, 1992 assessments of Parcel # 16 and Parcel # 19. The State Board held a hearing on the peti-

1. See IND.CODE ANN. § 6–1.1–15–3(a) (West Supp. 1998).

tions on November 9, 1995. The State Board issued its final assessment determinations on the 131 Petitions on November 22, 1996. Unsatisfied with the changes made by the State Board, Phelps filed this original tax appeal on January 6, 1997. On January 12, 1998, the parties tried this cause before this Court. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives final determinations of the State Board great deference when the State Board acts within the scope of its authority. *See Garcia v. State Bd. of Tax Comm'rs*, 694 N.E.2d 794, 795–96 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when they are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* at 796.

### Discussion

I. Whether the State Board's final determinations with regard to the obsolescence depreciation of the subject improvements were without substantial evidentiary support.

The sole issue for this Court's review with regard to the obsolescence of the subject improvements is whether the State Board's decision to quantify the obsolescence of the subject improvements on Parcels 16 and 19 in varying amounts[2] has any evidentiary support. (Joint Ex. B). In *Clark v. State Board of Tax Commissioners*, 694 N.E.2d 1230 (Ind. Tax Ct.1998), the Court evaluated whether the State Board's decision to award

5% obsolescence to the subject apartment buildings was supported by substantial evidence. At the outset of its analysis, the Court noted that "the determination of obsolescence is a two-step inquiry. The assessor must identify the causes of obsolescence and then quantify the amount of obsolescence to be applied." *Id.* at 1238. With respect to the second part of the inquiry, the Court noted that although the regulation governing obsolescence provided no guidance on how the obsolescence of a particular improvement was to be quantified, this did not absolve the State Board of the responsibility to support its quantification of obsolescence with substantial evidence. *See id.* at 1240.

■ In this case, the State Board complains that Phelps provided no evidence concerning the obsolescence depreciation of the subject improvements. However, the fact that the parties agree on the causes of obsolescence obviates Phelps' burden of offering probative evidence showing that the subject improvements experience obsolescence. As for the quantification of obsolescence, as noted above, the regulations provide no guidance concerning how to quantify the effect of that obsolescence on the value of the subject improvements.

In this Court's decision in *Clark*, the Court noted the problems with the fact that the regulations governing obsolescence provided no guidance on how obsolescence should be quantified. The Court addressed those problems by issuing a prospective rule that taxpayers could use professional appraisal techniques to quantify obsolescence. This allows taxpayers to make detailed factual presentations to the State Board, the acknowledged property tax experts. *See id.* at 1241.[3]

---

2. As stated above, there are several improvements located on each parcel. However, Phelps does not make specific challenges to the specific amounts of obsolescence depreciation applied to each improvement. Rather, Phelps makes the generalized contention that the State Board's quantification of obsolescence depreciation is arbitrary or capricious and unsupported by substantial evidence. In its final determination, the State Board did not make specific findings with respect to each improvement on the obsolescence issue. (Ex. A at 18, 20).

3. In *Clark*, this Court stated that it would not consider taxpayer complaints concerning obsolescence in cases where the State Board holds a hearing regarding an assessment after April 24, 1998, the date of the *Clark* decision, unless the taxpayer "identified the causes of the alleged obsolescence and presented probative evidence that would support a quantification of obsolescence at the administrative level." *Id.* The hearing in this case was held on November 9, 1995; therefore, the prospective rule announced in *Clark* does not apply. *See Loveless Const. Co. v.*

■ In this case, both parties agree that the small bays and limited use cause obsolescence in the subject improvements. The State Board quantified the effect of these causes of obsolescence for the subject improvements at varying percentages. However, there is no evidence in the record, including the State Board's final determination, to support the State Board's quantification of obsolescence except the unsupported subjective opinion of the State Board's hearing officer. (Trial Tr. at 27). *See Canal Square Ltd. Partnership v. State Bd. of Tax Comm'rs,* 694 N.E.2d 801, 808 (Ind. Tax Ct.1998).

The State Board offered no evidence as to how it quantified the obsolescence of the subject improvements. Consequently, this Court's holding in *Clark* mandates reversal.[4] However, in *Clark,* the Court noted its frustration with that result because the Court was compelled "to choose between holding for the taxpayer, who presented no evidence of how the ... [p]roperty's obsolescence should be quantified ... and holding for the State Board, when the State Board had absolutely no evidence to support its choice of 5% obsolescence...." *Id.* at 1241. This case presents the same problem: Neither the State Board nor Phelps offered the Court any evidence concerning the quantification of obsolescence of the subject improvements. This issue is REMANDED for further consideration consistent with this opinion and this Court's opinion in *Clark.*

II. Whether the State Board's final determination with regard to the condition of the subject improvements was without substantial evidentiary support.

■■ The True Tax Value system takes the physical depreciation of improvements into account in arriving at their True Tax Value. The physical depreciation of a particular improvement is based on its age, condi-

tion, and structure type. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.* r. 2.2–12–4(c) (1996)). An improvement's physical depreciation is expressed as a percentage. *See id.* This percentage is determined by ascertaining the age and condition of the improvement and then consulting the economic life table corresponding to the structure type of the improvement. *See id.; see also Barth, Inc. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 800, 808 (Ind. Tax Ct.1998), *reh'g denied,* 705 N.E.2d 1084 (Ind. Tax Ct. 1998).

■ The condition of an improvement represents the improvement's remaining usefulness. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1. An improvement's condition is determined by an observation of the amount of physical deterioration relative to the age of that improvement and the degree of maintenance relative to the age of that improvement. *See id.* "To estimate the level of condition, the assessor must determine the average condition of similar structures, [and] then relate the structure being [assessed] to that established average." *Id.* Once the assessor does this, the assessor must then choose one of seven "levels of condition" ranging from Excellent to Very Poor to assign to the improvement being assessed. *See id.*

■ Phelps contends that the State Board's final determination with respect to the condition of the subject improvements is erroneous because those final determinations are based on a regulation that lacks ascertainable standards. Phelps argues, in effect, that any determination of condition is per se reversible due to the problems with the regulation governing condition. Phelps makes this generalized contention without making specific allegations with respect to the condition of each of the subject improvements.[5]

---

*State Bd. of Tax Comm'rs,* 695 N.E.2d 1045, 1049 n. 4 (Ind. Tax Ct.1998), *review denied.*

4. Because some of the subject improvements were rebuilt in 1994, it may be impossible to accurately determine the obsolescence of those improvements as of March 1, 1992. If that is the case, then no changes to the obsolescence of those improvements may be made on remand.

5. The State Board's final determinations also do not treat the condition of each improvement separately, except to note that some of the improvements were rebuilt. One of the final determinations merely states, "Upon inspection of the buildings[,] it is determined [that] the condition is correct." (Ex. A at 18). Solitary statements such as these in no way facilitate judicial review.

In addition, Phelps offered no evidence relating specifically to the amount of physical deterioration of the subject improvements.

■ Phelps is correct in its assertion that the regulation governing condition is seriously flawed. An almost identical regulation has recently been declared unconstitutional.[6] *See State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1039 & n. 7 (Ind. 1998), *aff'g in part, rev'g in part*, 690 N.E.2d 370, 386 (Ind. Tax Ct.1997). However, the fact that the subject improvements were assessed under an unconstitutional regulation does not mandate reversal in this case. *See Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind. Tax Ct. 1998), *petition for review filed*, Jan. 20, 1999 (citing *Dana Corp. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1244, 1247 (Ind. Tax Ct.1998); *Town of St. John v. State Bd. of Tax Comm'rs*, 691 N.E.2d 1387 (Ind. Tax Ct.1998) (order and judgment entry), *rev'd in part, aff'd in part*, 702 N.E.2d 1034 (Ind. 1998)). "Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system. This reality means that a taxpayer will not be able to come into court, point out the inadequacies of the present system and obtain a reversal of an assessment." *Id.* Instead, a taxpayer must offer probative evidence relating to the error that the taxpayer has raised.[7] *See id.* at 1119, 1121.

This is not an onerous requirement. Despite the fact that the flaws in the regulation governing condition make it very difficult, if not impossible, for a taxpayer to conclusively establish the "level of condition" of a particular improvement,[8] *see Whitley Prods., Inc.*, 704 N.E.2d at 1120, a taxpayer is not precluded from offering probative evidence concerning the amount of physical deterioration of that improvement. Although it is not for the Court to explain to taxpayers how to make their cases, *see Monarch Steel Co. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 809, 812 (Ind. Tax Ct.1998), the Court notes that the regulation governing condition gives specific examples of physical deterioration, such as dry rot, cracks, structural defects. IND. ADMIN. CODE tit. 50, r. 2.1–5–1. The taxpayer could offer evidence of such problems.[9]

In addition, the taxpayer could offer evidence of comparable properties to demonstrate error in the State Board's determination of the condition of a particular improvement.[10] As noted above, the regulation governing condition requires an assessor to evaluate similar properties in arriving at the proper "level of condition" for a particular improvement. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1. Finally, the taxpayer may offer evidence tending to establish how much maintenance would be required to restore the improvement to perfect condition. *See id.* tit. 50, r. 2.1–3–3 (1993) (codified in present form at *id.* r. 2.2–7–7.1(19) (1996)). Although this concept is not found in the regulations governing commercial and industrial property, it would not be inappropriate to of-

---

6. The regulations declared unconstitutional were those governing the 1995 state-wide general reassessment. The regulations at issue in this case govern the 1989 state-wide general reassessment.

7. Once the taxpayer does so, it is incumbent upon the State Board to deal with that evidence in a meaningful manner. *See Loveless Constr. Co.*, 695 N.E.2d at 1049. If the State Board fails to do so, the State Board's final determination will be reversed. *See Clark*, 694 N.E.2d at 1235.

8. Therefore, the State Board cannot be heard to complain that a taxpayer did not establish the "level of condition" of an improvement.

9. Of course, the taxpayer is not limited to the specific examples provided in the regulations. *See Lake County Trust Co. No. 1163 v. State Bd. of*

*Tax Comm'rs*, 694 N.E.2d 1253, 1257 (Ind. Tax Ct.1998), *review denied.* The taxpayer could offer evidence of anything that bears on the amount of physical deterioration suffered by a particular improvement, e.g., faulty wiring or a leaky roof.

10. The Court acknowledges that it may be difficult for taxpayers to acquire information demonstrating that other improvements are indeed comparable to the improvement being assessed. A thorough comparison can only be made where the inside of the improvement used for comparison is inspected. Obviously, this is not always possible. Therefore, the Court cannot expect that every taxpayer challenging a State Board determination of condition will be able to demonstrate that the inside of an improvement used for comparison purposes is comparable to the improvement at issue in the case.

fer probative evidence on this point.[11]

In this case, Phelps presented no evidence relating to the condition of the subject improvements. Therefore, the Court will not reverse the State Board's determination of the condition of the subject improvements, and the Court AFFIRMS the final determinations of the State Board on this issue.[12]

III. Whether the State Board's final determinations with regard to negative influence factors were without substantial evidentiary support.

Phelps contends that it is entitled to an increase in the negative influence factors applied to the subject properties because the State Board's quantification of those negative influence factors lacks substantial evidentiary support. The State Board applied negative influence factors of thirty-five percent (35%) and sixty-five percent (65%) to the parcels at issue.

Generally, land values in a given neighborhood are determined through the application of a Land Order. IND. ADMIN. CODE tit. 50, r. 2.1–2–1 (1992) (codified in present form at IND. ADMIN. CODE · tit. 50, r. 2.2–4–2,–6 (1996)). Land Orders are developed by collecting and analyzing comparable sales data for the neighborhood and surrounding areas. *See Talesnick v. State Bd. of Tax Comm'rs*, 693 N.E.2d 657, 659 n. 5 (Ind. Tax Ct.1998) (citing IND.CODE ANN. § 6–1.1–4–13.6; IND. ADMIN. CODE TIT. 50, r. 2.1–2–1); *Poracky v. State Bd. of Tax Comm'rs*, 635 N.E.2d 235, 238 (Ind. Tax Ct.1994). The County Land Valuation Commission studies the sales data and recommends a range of values for the property in a neighborhood. *Talesnick*, 693 N.E.2d at 659 n. 5 (citing IND.CODE ANN. § 6–1.1–4–13.6). The State Board then sets the final values in a Land Order and assigns a value to each parcel in a neighborhood based on the range provided in the promulgated Land Order. *Id.* (citing

*Wirth v. State Bd. of Tax Comm'rs*, 613 N.E.2d 874, 878 (Ind. Tax Ct.1993)).

Influence factors may be used by the State Board to adjust Land Order values for properties that possess characteristics that make those properties unique. "A[n] ... influence factor is justified in instances where property has a 'condition peculiar to the land that dictates an adjustment, either positive or negative, ... to account for variations from the norm.'" *See Talesnick*, 693 N.E.2d at 660 (citing IND. ADMIN. CODE tit. 50, r. 2.1–2–1 (codified in present form at *id.* 2.2–4–10(a)(9) (1996))); *see also Poracky*, 635 N.E.2d at 236 (taxpayer's land was given a 25% negative influence factor to account for inadequate seawall protection). In order to apply an influence factor, the assessor must identify deviations in the subject property from the norm. *See* IND. ADMIN. CODE tit. 50, r. 2.1–2–1. These deviations are expressed as a percentage that reflects the "composite effect of the factor or factors that influence the value."[13] *Id.*

In short, the assessed value of a particular piece of property must initially fall within the given range provided in a Land Order. However, properties often posess peculiar attributes that do not allow them to be lumped with each of the surrounding properties for purposes of valuation. Therefore, the State Board has developed the concept of influence factors in an effort to allow assesors to account for this problem by adjusting, either upward or downward, the value placed on a piece of property by the Land Order.

In the case at bar, the State Board applied negative influence factors to the subject properties to account for the size and shape of the parcel and for "underimprovement." (Trial Tr. at 29). The State Board, however, offered no evidence to demonstrate how it calculated the negative influence fac-

11. The Court, of course, cannot assume that language in one regulation is applicable to another. *See Garcia v. State Bd. of Tax Comm'rs*, 694 N.E.2d 794, 799 (Ind. Tax Ct.1998). This rule, however, is not strictly applicable here. In this case, the Court is only determining what is relevant, not what is controlling.

12. In light of the Court's disposition of this issue, the Court need not discuss the fact that some of the subject improvements were rebuilt.

13. Although still based largely on a subjective estimate by an assessor, the State Board's current regulations offer more information regarding the application of influence factors. *See* IND. ADMIN. CODE tit. 50, r. 2.2–4–12 (1996).

tors that it applied. In fact, the State Board failed to mention the issue of influence factors in its brief. Further, the hearing officer admitted at trial that he was "not entirely sure" how the negative influence factors were quantified. (Trial Tr. at 29). This does not constitute the substantial evidence necessary to support a State Board final determination. *See Talesnick,* 693 N.E.2d at 661; *see also Western Select Properties v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1073 (Ind. Tax Ct.1994); *see also Canal Square,* 694 N.E.2d at 801.

The State Board has a duty to support its decisions with substantial evidence, and no evidence as to the percentages of negative influence factors granted for the subject properties was provided. Therefore, the Court REMANDS this issue.

■ On remand, the negative influence factor of the subject properties will have to be quantified despite the fact that the regulations give little or no guidance on how this is to be done. In dealing with a similar situation, the Court noted that the administration of this state's property tax system is best served by having taxpayers make factual presentations before County Boards of Review, the State Board, and this Court. *See Clark,* 694 N.E.2d at 1241. Moreover, as the Court stated in *Clark,* "[t]he fact that the State Board's regulations ... are less than satisfactory does not alter this conclusion." *Id.* Therefore, this Court will not consider taxpayer complaints concerning influence factors in cases where the State Board holds a hearing concerning an assessment after the date of this opinion, unless the taxpayer has presented probative evidence that would support an application of a negative influence factor and a quantification of that influence factor at the administrative level. *Id.* This begs the question of how the taxpayer is to quantify the influence factors affecting his property.

As noted above, the Land Orders promulgated by the State Board are based on comparable sales data collected from the subject neighborhood and surrounding areas. *See* IND. ADMIN. CODE tit. 50, r. 2.1–2–1. The comparable sales data is used to arrive at a property valuation range for the properties located in the particular neighborhood. Thus, the values assigned to the properties in a neighborhood are based on relevant market data. Influence factors are then applied to account for deviations of the subject property from the norm.

■ These influence factors, expressed as a percentage, reflect a deviation from the market based range of values assigned to the property through the Land Order. Therefore, influence factors may be quantified by the use of market data in order to effectively reflect the actual deviation from the market value assigned a piece of property through the Land Order.[14] Consequently, the Court holds that in any hearing regarding influence factors, market data may be used to quantify influence factors. *See Talesnick,* 693 N.E.2d at 657; *see also Vonnegut,* 672 N.E.2d at 90.

IV. Whether the State Board correctly determined the age of the subject improvements and utilized the correct physical depreciation in determining the physical depreciation of the subject improvements.

Phelps contends that the State Board utilized improper physical depreciation tables and incorrectly determined the age of the subject improvements in determining the applicable amount of physical depreciation for the subject improvements. In response, the State Board argues that the issue is waived because Phelps did not refer these issues until its post-trial brief.

14. The Court is aware that the property tax assessment system currently in place in Indiana is not based on market value but rather True Tax Value, which is "determined under the rules of the state board of tax commissioners." *See* IND CODE ANN. § 6–1.1–31–6(c) (West 1989). However, the use of market concepts in the quantification of influence factors does not run afoul of section 6–1.1–31–6(c) because the regulations describing Land Orders and influence factors specifically refer to market concepts such as the use of comparable sales data in setting land values. *See* IND. ADMIN CODE tit. 50, r. 2.1–2–1. Therefore, the use of market concepts in the quantification of influence factors is a permissible means of quantifying influence factors under the True Tax Value system. *Cf. Canal Square,* 694 N.E.2d at 806–07.

This Court may not address issues that were not raised at the administrative level. IND.CODE ANN. § 33–3–5–14 (West 1996); *State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.,* 420 N.E.2d 1324 (Ind.Ct. App.1981). This rule holds true even where the taxpayer could have established entitlement to relief. *See Harbor Food Plaza, Inc. v. State Bd. of Tax Comm'rs,* 638 N.E.2d 898, 901 (Ind. Tax Ct.1994).

Phelps never raised these issues in its contentions nor did it offer any evidence concerning these issues at the State Board hearing. Therefore, these issues are waived, and the State Board's final determinations with respect to the age and choice of physical depreciation tables are AFFIRMED.

## CONCLUSION

For the reasons stated above, this Court REMANDS issues I and III to the State Board for further proceedings consistent with this opinion. The State Board is AFFIRMED as to issues II and IV.