CANAL REALTY–INDY CASTOR,
Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

No. 49T10–9803–TA–23.

Tax Court of Indiana.

Feb. 5, 2001.

David L. Pippen, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Vincent S. Mirkov, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

■ Petitioner Canal Realty–Indy Castor (Canal) appeals the final determination of the State Board of Tax Commissioners (State Board) establishing the assessed value of Canal's property as of March 1, 1992. Canal presents various issues for the Court's consideration, which the Court restates as:

I. Whether the State Board erroneously denied Canal an additional obsolescence adjustment for the subject improvements;

II. Whether the State Board violated Canal's due process rights when it sua sponte assessed paving on the subject property after its hearing officer inspected the property, where the State Board only permitted Canal an opportunity to respond via written communication with the hearing officer; and

III. Whether the State Board incorrectly valued the paving on the subject property.[1]

## FACTS AND PROCEDURAL HISTORY

Canal owns the subject property located in Marion County, Indiana. The township assessor initially valued the subject land at $10,830 and the subject improvements at $86,900, and the Marion County Board of Review sustained these values. On Febru-

ary 9, 1994, Canal filed a Form 131 petition for review challenging these assessed values. Specifically, Canal asserted the following: "Excessive amount of land classified as primary. Additional obsolescence depreciation should be applied." (State Bd. Tr., Ex. A.) On November 17, 1995, the State Board conducted an administrative hearing on the petition.

At some point, Hearing Officer Norman Binford sent Canal's taxpayer representative, Mr. M. Drew Miller, a letter stating in part that "No assessment has been made in regards to the paving of this parcel. It is determined that 57,050 square feet of paving exists."[2] (Joint Ex. 1.) Furthermore, Binford indicated the condition and age of the paving and posited that it should be priced at ninety cents per square foot.[3] *Id.* In the letter, Binford valued the paving at $8400. *Id.* The letter gave Miller ten days "to present any additional evidence that will have a bearing on these issues." *Id.*

Miller responded in a letter dated January 15, 1997, in which he opined that the "paving is in such poor condition that it does not add value to the property and should not be assessed." (State Bd. Tr., Ex. C.) In addition, Miller requested that Binford forward to him all evidence that was gathered outside the administrative hearing and further requested an opportunity to respond to the evidence. *Id.* He also wanted "[e]vidence gathered in determining that additional obsolescence depre-

---

1. Canal raises an additional issue: whether the State Board's assessment regulations violate both the United States Constitution and the Indiana Constitution. However, the fact that the subject property was assessed under an unconstitutional regulation does not mean the assessment will be invalidated on that basis. *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998) (citations omitted), *review denied.* "Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Id. See also Town of St. John v. State Bd. of Tax Comm'rs*, 729 N.E.2d 242, 246 & 251 (Ind. Tax Ct.2000) (ordering that all real property

in Indiana shall be reassessed under new, constitutional rules as of March 1, 2002, and stating that, until then, real property tax assessments shall be made in accordance with the current system). Therefore, the Court will not address the constitutionality issue.

2. The letter as typewritten is undated; however, handwritten notations on the letter indicate that it was mailed on January 13, 1997.

3. According to this letter, "Condition is determined to be 28,525 fair, 17,150 poor and 11,375 in very poor condition. Age is determined to be 1975." (Joint Ex. 1.)

ciation should or should not be applied."
*Id.*

In a letter dated April 23, 1997, Binford explained that the paving's age was an estimate and that he would consider any evidence showing the paving to be older. (State Bd. Tr., Ex. D.) He asked that Miller "forward any information that tends to prove [the paving's] actual age within ten (10) days." *Id.* Also, Binford stated that the paving's condition was determined by "physical examination of the property in November of 1996" and that its square footage was determined "from a photograph made in the spring of 1985 with a scale of enlargement of 1 [inch] to 100 [feet]."[4] *Id.* As regards obsolescence, he wrote "Obsolescence applied by the [County Board of Review] is determined to be without error. No evidence is presented that additional obsolescence is warranted." *Id.*

Miller replied via letter dated April 30, 1997:

Again with regard to the paving, we need to know what evidence you gathered outside the hearing held 11/17/95 that the paving was in fact in existence on 03/01/92 or whether it was refurbished after 03/01/92 but before your inspection date. Also, how was it determined that all of the paving sits on this parcel[?] Finally what evidence did you gather to show that the paving actually adds value to the property[?]

(State Bd. Tr., Ex. E.)

The State Board issued its final determination on January 28, 1998. With respect to obsolescence, the State Board concluded: "Obsolescence depreciation can not be granted without either supportable evidence submitted by the petitioner or without verification from inspection of the structures. After inspecting the structures it is determined that there are no symptoms to support the application of additional obsolescence depreciation. It is determined there is no additional obsolescence granted."[5] (State Bd. Tr., Ex. F.) Also, the State Board stated that, after inspection of the site, "it is determined there is 57,050 square feet of paving that was omitted from the assessment. A change is made as a result of this finding." *Id.*

Canal filed this original tax appeal on March 13, 1998. The Court conducted a trial on November 9, 1998. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

 The Court gives great deference to the State Board's final determinations when the State Board acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998).

### Discussion

#### I. Obsolescence

Canal contends that the State Board failed to meaningfully consider its evidence of obsolescence and provided no evidence or explanation for its determination that an additional obsolescence adjustment was not warranted under the circumstances. According to Canal, it "presented the State

---

4. This photograph was submitted as Joint Exhibit 4. It was furnished by the State Land Office Division of the Administrative Office. (State Bd. Tr., Ex. D); (Joint Ex. 4.)

5. Most areas of the subject improvements received a forty percent obsolescence adjustment; one area received a twenty percent adjustment. (Joint Ex. 6.)

Board with an accepted appraisal method and data necessary to properly calculate obsolescence depreciation." (Pet'r Br. at 5.) The State Board maintains that Canal failed to show why the assigned obsolescence adjustment was incorrect. The State Board argues that Canal offers no probative evidence as to obsolescence, so that the State Board's duty to support its final determination with substantial evidence on this issue was never triggered. (Resp't Br. at 6–8) (citing *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113 (Ind. Tax Ct.1998), *review denied*).

■■■ "Obsolescence Depreciation is composed of functional and economic loss of value. Functional Obsolescence ... is evidenced by conditions within the property. Economic obsolescence is caused by factors external to the property." IND.AD-MIN.CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.*, 2.2–10–7(e) (1996)). Obsolescence is expressed as a percentage reduction in the remaining value of the subject improvement. *Id.* (codified in present form at *id.*, r. 2.2–10–7(f) (1996)). Determination of obsolescence involves (1)

identification of causes of obsolescence and (2) quantification of the amount of obsolescence to be applied. *Clark*, 694 N.E.2d at 1238. The regulations list various causes of functional and economic obsolescence. IND.ADMIN.CODE tit. 50, r. 2.1–5–1 (1992). The list is illustrative, not exhaustive. *Lake County Trust v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1253, 1257 (Ind. Tax Ct.1998), *review denied*. To quantify obsolescence, parties may use generally recognized appraisal methods. *Clark*, 694 N.E.2d at 1242 n. 18.

■■■ The parties agree that obsolescence is present in the subject improvements. Therefore, quantification of obsolescence, not the identification of causes thereof, is the issue here. *Phelps Dodge v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1099, 1102 (Ind. Tax Ct.1999) (stating that fact that parties agree on causes of obsolescence "obviates [taxpayer's] burden of offering probative evidence showing that the subject improvements experience obsolescence"), *review denied*. Canal submitted an "Assessment Review and Analysis" (Review) to support its argument for an increased obsolescence adjustment.[6]

---

**6.** Although identification of causes of obsolescence is not at issue, the Court notes that the Review contains ten color photographs of the interior and exterior of the subject property. The photographs' captions identify only the general location of the areas shown (e.g., "East Side of Building" and "Production Area"). In addition, the Review contains a copy of page three from Rule 5 of the State Board's assessment manual. This page three lists various causes of functional and economic obsolescence. *See also* IND.ADMIN.CODE tit. 50, r. 2.1–5–1 (1992). The Review highlights in yellow marker four causes of functional obsolescence and three causes of economic obsolescence. Presumably, the highlighted causes are those from which Canal asserts its improvements suffer. In its "List of Contentions," the Review provides that the "building suffers from nearly every item of obsolescence listed in Regulation 17." (Joint Ex. 2.) First, photographs, without further explanation, are not probative evidence as to causes of obsolescence. *Cf. Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 333 (Ind. Tax Ct.1999) (addressing grade). The captions in the Review do not constitute explana-

tions with respect to obsolescence. Second, the highlighted marks on page three, without further explanation, are conclusory and thus not probative as to causes of obsolescence in this case. *Cf. Kemp v. State Bd. of Tax Comm'rs*, 726 · N.E.2d 395, 401 (Ind. Tax Ct.2000) (holding that checkmarks on grade specification table were not probative as to improvement's grade). *Accord Bernacchi v. State Bd. of Tax Comm'rs*, 727 N.E.2d 1133, 1136–37 (Ind. Tax Ct.2000). Third, the Review's statement that the improvements suffer "nearly every item of obsolescence" is likewise conclusory and non-probative. *See CDI, Inc. v. State Bd. of Tax Comm'rs*, 725 N.E.2d 1015, 1020–21 (Ind. Tax Ct.2000). The State Board's final determination observed that there were "no symptoms to support the application of additional obsolescence depreciation." (State Bd. Tr., Ex. F.) To the extent that Canal may be challenging the determination that no additional causes of obsolescence are present in the subject improvements, the Court concludes that Canal offered no probative evidence on this issue and thus failed to establish a prima facie case as to additional causes of obsolescence. With respect to

(Joint Ex. 2.) The Review states that "60% overall obsolescence should be applied" to the subject property. (Joint Ex. 2.) Included in the Review are four pages from a manual on property assessment. Canal does not identify the title of the manual. At trial, a witness for Canal, Mr. Lance Rickard, identified the information as a section from the Property Assessment Valuation Manual and stated that it is a publication by the International Association of Assessing Officers (IAAO). (Trial Tr. at 12.) The section copied is titled "Methods of Measuring Depreciation" and states "There are six methods used to measure accrued depreciation," including the "Comparative Sales Data Method." (Joint Ex. 2.) According to the IAAO's Manual, this method estimates accrued depreciation by using the replacement cost new of the subject building and incorporating sales data from "Buildings of similar age, condition, and desirability that have been sold recently." *Id.* The Review also contains data from two sales of allegedly comparable properties. *Id.*

 Assuming, without holding, that the comparative sales data method advocated by Canal is a generally recognized appraisal method,[7] the Court observes that Canal has failed to present a prima facie case as to quantification of obsolescence. First, that a sixty percent

obsolescence adjustment should be applied is a conclusory observation that does not constitute probative evidence.[8] *Cf. CDI, Inc. v. State Bd. of Tax Comm'rs,* 725 N.E.2d 1015, 1019 (Ind. Tax Ct.2000) (addressing grade). Second, the Review does not explain how the listed sales information, when using the comparative sales data method, supports application of a 60% obsolescence adjustment. In fact, Canal has made absolutely no effort to quantify obsolescence in this case. At trial, Rickard testified that the Review does not "show the exact calculation, but from looking at the data that's presented here it would be very easy to calculate that overall depreciation factor based on the two comparable sales that are in here and then quantifying that . . . obsolescence based on whatever physical deterioration is on the property record card." (Trial Tr. at 13–14.) The Court can only speculate as to why, if the calculation would be "very easy" as Rickard opines, Canal failed to make the calculations. Rather, Canal expects the Court to make the obsolescence calculations using the information provided by the Review. The Court refuses to perform Canal's work for it. *CDI,* 725 N.E.2d at 1020. Canal's efforts with respect to quantification in this case are, at best, "gravely insufficient."[9] *Id.* In this case,

causes of obsolescence, the State Board's final determination stands. *White Swan Realty v. State Bd. of Tax Comm'rs,* 712 N.E.2d 555, 560 (Ind. Tax Ct.1999), *review denied.*

7. Rickard testified that the comparative sales data method is "typically used throughout the country in mass appraisal techniques" and is a "generally accepted method of quantifying depreciation from all causes." (Trial Tr. at 12–13.) However, Rickard does not explain how this method, which uses market information, supports a claim for obsolescence. *See Lake County Trust Co. No. 1163 v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1253, 1258 (Ind. Tax Ct.1998), *review denied.*

8. The Review calls for "60% overall obsolescence." (Joint Ex. 2.) However, Canal does not explain whether or to what extent the sixty percent "overall obsolescence" adjust-

ment includes an adjustment for physical depreciation—an adjustment that is distinct and separate within the State Board's "Remainderment Method" for calculating an improvement's true tax value. IND.ADMIN.CODE tit. 50, r. 2.1–5–1 (1992). *See also Western Select Props. v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1071 n. 2 (Ind. Tax Ct.1994) (noting taxpayer's admission that regulations do not define or provide for "overall obsolescence"). The Court also observes that the Review fails to distinguish between functional and economic obsolescence.

9. Canal's review, as regards quantification of obsolescence, suffers several flaws. For example, the section of the IAAO Manual cited in the Review states that the comparative sales data method "does not produce a breakdown or allocation of physical deterioration, functional obsolescence, and economic obso-

calculation of obsolescence is a key part of Canal's argument. A "party who stands to be adversely affected by a petition for review has an *obvious responsibility* to present evidence and *argument* in support of its position." *North Park Cinemas v. State Bd. of Tax Comm'rs*, 689 N.E.2d 765, 769 (Ind. Tax Ct.1997) (emphasis added).

Although Canal presented no prima facie case as to the quantification of obsolescence, it did not have to do so in this case in order to trigger the State Board's duty to support its quantification with substantial evidence. Fortunately for Canal, the administrative hearing in this matter took place in 1995. In *Clark v. State Board of Tax Commissioners*, 694 N.E.2d 1230, 1241 (Ind. Tax Ct.1998), this Court held that it would not consider taxpayer complaints concerning obsolescence in cases where the State Board holds administrative hearings after April 24, 1998 (the date of the *Clark* opinion), "unless the taxpayer has identified the causes of the alleged obsolescence and presented probative evidence that would support a quantification of obsolescence at the administrative level." Thus, in this pre-*Clark* case, the State Board was obligated to support its quantification with substantial evidence regardless of Canal's woefully inadequate quantification efforts.

The State Board's final determination does not alter the Board of Review's quantification of obsolescence. (State Bd. Tr., Ex. F.) It states first that, following inspection of the subject property, no causes of obsolescence were discovered to support the application of an additional obsolescence adjustment. *Id.* The final determination then states that "It is determined there is no additional obsolescence granted." *Id. See also* (State Bd. Tr., Ex. D) (letter from hearing officer stating that

"Obsolescence applied by the [Board of Review] is determined to be without error"). Thus, the State Board affirmatively determined that the Board of Review's quantification of obsolescence was correct.

In *Loveless Construction Co. v. State Board of Tax Commissioners*, 695 N.E.2d 1045, 1048 (Ind. Tax Ct.1998), the State Board's final determination used similar language to deny the taxpayer's request for an additional obsolescence adjustment beyond the five percent reduction awarded by the Board of Review. The State Board in *Loveless* argued that it was merely preserving the status quo, in the absence of probative evidence by the taxpayer with respect to quantification of obsolescence. *Id.* The Court, however, held that the taxpayer was permitted to show that the State Board's final determination was not supported by substantial evidence. *Id.* *See also Freudenberg–NOK General Partnership v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1026, 1029–30 (Ind. Tax Ct.1999) (holding that State Board was obligated to support its decision affirming Board of Review's application of a twenty percent obsolescence adjustment with substantial evidence, where State Board "simply stated that [taxpayer] did not present evidence supporting the need for additional obsolescence"), *review denied.*

█ As in *Loveless*, the State Board in the present case was obligated to support its approval of the Board of Review's quantification of obsolescence with substantial evidence. A review of the record reveals no evidentiary basis for the State Board's decision. Therefore, its final determination approving the Board of Review's quantification of obsolescence is REVERSED and REMANDED.

---

lescence." (Joint Ex. 2.) As noted *supra* note 8, the distinction between physical depreciation and obsolescence is important in calculating an improvement's true tax value. Furthermore, the IAAO Manual states that the comparative sales data method "requires ample sales data of truly comparable proper-

ties." (Joint Ex. 2.) Canal does not explain how two sales qualify as "ample." In addition, Canal does not explain how the improvements that are the subject of the so-called "comparable sales" are similar in age, condition and desirability to the subject improvements.

Upon remand, Canal must submit probative evidence sufficient to establish a prima facie case as to the quantification of obsolescence. *Clark,* 694 N.E.2d at 1241. The State Board, in turn, must deal with the taxpayer's probative evidence in a meaningful manner. *Loveless,* 695 N.E.2d at 1049. If the taxpayer establishes a prima facie case on this issue, the State Board must rebut Canal's evidence and support its final determination with substantial evidence. *Id.* To carry its burden of production, "the State Board must do more than merely assert that it assessed the property correctly. Instead, the State Board must offer an authoritative explanation of its decision to discount the taxpayer's prima facie case." *Id.* (citations omitted).

If the State Board deems Canal's evidence non-probative or concludes that Canal has not presented a prima facie case as to quantification[10] of obsolescence, it should indicate this in its final determination. Then, the State Board may merely state in its final determination that Canal takes nothing by its petition. In this way, the State Board neither passes judgment on nor endorses the accuracy of the Board of Review's decision. In that event, the Board of Review's quantification of obsolescence stands automatically. *Cf. Clark v. State Bd. of Tax Comm'rs,* 742 N.E.2d 46, 49–50 n. 5 (Ind. Tax Ct.2001) (applying similar analysis in taxpayer's challenge as to grade). If Canal does not establish a prima facie case of quantification and the State Board chooses to change the assigned obsolescence adjustment, then it must support its quantification of obsolescence with substantial evidence if Canal is prejudiced by the State Board's action. *Cf. id.*

## II. Due Process

■ Canal claims that the State Board violated Canal's right to due process when the State Board assigned value to previously non-assessed paving on the subject property sua sponte without giving Canal an opportunity to address issues raised by the assessment. Canal questions whether the paving adds "value" to the subject property, a prerequisite for its assessment pursuant to IND.ADMIN.CODE tit. 50, r. 2.1–4–3(g)(2) (1992), which provides "Only those yard improvements that add value to the property and that are not included in land improvements are included in the replacement cost estimate." According to Canal, the "assessments are in error due to the failure of the State Board to provide the taxpayer with an opportunity to meet the issue of the 'value' of the paving." (Pet'r Br. at 5.)

■ The State Board, upon hearing an appeal initiated by a taxpayer pursuant to IND.CODE § 6–1.1–15–3 (the Form 131 review process), "may assess the property in question, correcting any errors which may have been made." IND.CODE ANN. § 6–1.1–15–4(a) (West 1989) (amended 1993, 1995 & 1997). Thus, the State Board may address and correct errors not raised in a taxpayer's petition for review. *Castello v. State Bd. of Tax Comm'rs,* 638 N.E.2d 1362, 1364 (Ind. Tax Ct.1994) (quoting *Wirth v. State Bd. of Tax Comm'rs,* 613 N.E.2d 874, 879 (Ind. Tax Ct.1993)). However, if the State Board does choose to address issues not raised by the taxpayer, "the taxpayer is constitutionally empowered to respond to the State Board's disposition of those issues." *Id.* (citing *Wirth,* 613 N.E.2d at 879). When the State Board considers ex parte evidence, the State Board is "required to provide taxpayers an opportunity to review and rebut that ex parte evidence." *Castello,* 638 N.E.2d at 1365. *See also State Bd. of Tax Comm'rs v. Oliverius,* 156 Ind.App. 46, 294 N.E.2d 646, 651 (1973) (noting that, in Indiana, administrative decisions deny due process when an agency considers ex

---

**10.** This suggested evaluative process also applies to the State Board's decisions as to the identification of causes of obsolescence.

parte evidence and a party is not afforded an opportunity to rebut the evidence).

■ The issue is whether Binford's correspondence with Miller constituted a sufficient opportunity to review and rebut the State Board's ex parte evidence under the circumstances. Whether it did is fact specific. *See City of Mitchell v. Graves*, 612 N.E.2d 149, 152 (Ind.Ct.App.1993) ("In determining whether constitutional requirements of due process have been met, courts should take cognizance of the practicalities and peculiarities of each particular case.") Without so stating in its briefs, Canal seems to argue that the State Board was obligated to conduct another administrative hearing to consider evidence of the paving's value. However, the law does not require another hearing in this case. Due process requires an opportunity to review and rebut the State Board's evidence but does not require an administrative hearing to do so under these circumstances.[11] In *Castello v. State Board of Tax Commissioners*, 638 N.E.2d 1362, 1364–65 (Ind. Tax Ct.1994), the State Board reassessed the taxpayers' land, buildings and asphalt after inspection, and the taxpayers were never given an initial opportunity to rebut the reassessment. Therefore, the Court remanded the issue to the State Board for additional administrative review, deeming the State Board the "appropriate arena" to address the reassessment of the taxpayers' property.[12] *Id.* at 1365.

In the present case, Canal was given an opportunity to review and rebut the ex parte evidence. Canal, via Miller, was given ten days from the date of Binford's initial letter to present evidence responding to the proposed assessment. (Joint Ex. 1.) Instead of providing additional evidence, Miller sent Binford a letter requesting all evidence gathered by the State Board and requesting a hearing. (State Bd. Tr., Ex. C.) Binford responded by letter that he had estimated the paving's age, that the paving's condition was determined by physical examination of the property in November 1996 and that the paving's square footage was determined by reference to a photograph furnished by the State Land Office. (State Bd. Tr., Ex. D.) The photograph was produced at trial. (Joint Ex. 4.) Binford gave Miller an additional ten days to respond. (State Bd. Tr., Ex. D.) Miller again responded via letter, requesting more information but supplying no evidence regarding the paving's construction. (State Bd. Tr., Ex. E.) Although Miller had no opportunity to cross-examine Binford, he did have an opportunity to review the evidence considered by Binford and to rebut the State Board's evidence in writing. Moreover, there is no indication that Miller lacked access to his client's property. That he chose not to review and rebut the State Board's evidence does not mean that he had no reasonable opportunity to do so. Therefore, the Court holds that the State Board did not deny Canal's due process rights in declining to conduct a second hearing on the issue of the paving's value.

III. Value of Paving

In *Castello*, the Court observed "In the typical case, when the State Board has given the taxpayer an opportunity to rebut, the taxpayer retains the burden in this Court to show evidence [that] the

---

11. The Court in *Castello*, 638 N.E.2d at 1365, did reject the State Board's argument that the taxpayers were provided the opportunity to rebut the ex parte evidence at the subject property's inspection. "The inspection of property, while part of the State Board's review process, does not itself constitute either a hearing or the opportunity to rebut." *Id.*

12. The State Board in most cases may be the most "appropriate arena" for the taxpayer's rebuttal, but it is not the only one. This Court, in *Herb v. State Board of Tax Commissioners*, 656 N.E.2d 890, 894 n. 4 (Ind. Tax Ct.1995) stated: "While it might be a better practice for the State Board to afford a taxpayer an opportunity to challenge a proposed determination when the hearing officer has inspected the property after a hearing, failure to so provide is not a denial of due process where such a challenge may be made to the court." *See also Wirth*, 613 N.E.2d at 879–80.

State Board's decision was unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary and capricious." 638 N.E.2d at 1365 n. 3. Having been given an opportunity to rebut the State Board's evidence at the administrative level, Canal now bears the burden of demonstrating that the State Board's assessment was invalid. *Clark*, 694 N.E.2d at 1233. In other words, Canal must provide the Court with probative evidence as to the paving's value or lack thereof. *See Sterling Mgmt.–Orchard Ridge Apartments v. State*, 730 N.E.2d 828, 834 (Ind. Tax Ct.2000). This includes probative evidence as to the paving's condition, for purposes of challenging the physical depreciation assigned to the paving. *See CDI*, 725 N.E.2d at 1022 (addressing need for probative evidence on issue of proper economic life table); IND.ADMIN.CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.*, r. 2.2–12–4 and 6.1 (1996)). However, Canal has provided no probative evidence as to the paving's value. The State Board's photograph of the subject property, set to scale, shows the paving's size, and the ninety-cent per square foot base rate applied to it is taken directly from Schedule G in the regulations, *see* IND.ADMIN.CODE tit. 50, r. 2.1–4–5 (1992) (codified in present form at *id*, r. 2.2–12–5 (1996)). While there is no substantial evidence presented as to the paving's condition, the State Board's duty to support its assessment with substantial evidence on this issue was never triggered, because Canal failed to establish a prima facie case on this issue and was not prejudiced by the State Board's decision.[13] *Sterling Mgmt.*, 730 N.E.2d at 835; *CDI*, 725 N.E.2d at 1022. *Cf. Clark*, at 49–50 n. 5. Therefore, the State Board's determination as to the value of the paving is AFFIRMED.

13. Canal was not prejudiced by the State Board's decision as to condition because, depending upon whether a section of paving was considered fair, poor or very poor, its

## CONCLUSION

For the aforementioned reasons, the State Board's final determination as to the quantification of obsolescence is REVERSED and REMANDED. The Court further concludes that Canal's due process rights were not violated. Finally, the Court holds that the State Board's valuation of the previously non-assessed paving is AFFIRMED.

cost of reproduction (as determined from Schedule G, *supra*) was lowered by either forty-five, fifty or fifty-five percent. (Joint Ex. 6.)